[L.A. No. 29891. In Bank. Dec. 2, 1971.]

VAL STEARNS, Plaintiff and Appellant, v.
FAIR EMPLOYMENT PRACTICE COMMISSION,
Defendant and Respondent;
ERNEST COOPER, Real Party in Interest and Respondent.

206

## COUNSEL

Hecker & Kenealy and Ronald A. Hecker for Plaintiff and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert H. O'Brien and Andrea Sheridan Ordin, Deputy Attorneys General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

**TOBRINER, J.**—When Ernest Cooper, a Negro, sought to rent an apartment from Val Stearns, Stearns required Cooper to complete a credit application and submit to a credit investigation before the apartment could be rented. Three hours after Stearns dealt with Cooper, a Caucasian sought the same apartment. Stearns solicited an immediate deposit but required no credit check, offering the Caucasian occupancy as soon as the apartment could be cleaned. On the basis of these facts, the Fair Employment Practice Commission (FEPC) found that Stearns discriminated against Cooper on the grounds of race. Stearns challenged the commission's findings by petition in the superior court for a writ of mandate. He charged that the commission lacked evidence on which to find discrimination, and that the commission produced a material variance between the accusation it issued against Stearns and the decision which it rendered against him. The superior court denied the writ and Stearns appeals.

We conclude that the superior court properly denied the writ of mandate.

Sufficient evidence supported the commission's ruling that Stearns pursued a discriminatory rental practice. No variance bifurcated the accusation and the commission's ruling; even if such a variance occurred, it occasioned no prejudice to Stearns. Finally, again assuming the presence of the variance, we cannot disturb the results of an administrative proceeding on that ground if such a variance would not constitute reversible error in a judicial trial.

In August 1968 Ernest Cooper, searching for an apartment in Los Angeles, obtained the assistance of an unofficial neighborhood fair housing organization.[1] Two volunteers from the housing group accompanied Cooper, who ultimately selected a vacant apartment that met his requirements. One of the volunteers then called the owner, Val Stearns, and represented to Stearns that he was interested in the apartment for a friend. Stearns responded that the apartment was available, setting an appointment to meet the prospective tenant two days later at the volunteer's place of business.

Accordingly Cooper, Stearns, and the fair housing volunteer met on August 20. Declaring at the outset that Cooper would be required to complete a credit application, Stearns proceeded to fill out the application by asking questions of Cooper. Cooper answered all interrogation without hesitation; Stearns raised no question about Cooper's financial ability to pay the $105 monthly rent. Stearns then indicated that he would check out the credit application; yet when Cooper asked if he could leave a deposit, Stearns replied that he should not do so. To Cooper's question whether he could make a deposit of any kind, Stearns responded negatively, stating clearly that before he could consider renting the apartment, he would be compelled to investigate the credit application carefully and thoroughly. In response to a query, Stearns said he did not know how long the credit check would take. Thereafter, at no subsequent time did Stearns either apprise Cooper of the results of the credit check or offer to rent the apartment to him.

On August 19th, the day before the Cooper-Stearns meeting, two white men, Nelson and Kiedaisch, working with the fair housing group, visited the vacant apartment and made an appointment with Stearns. When they subsequently met with Stearns, about three hours after Cooper's meeting, Nelson represented to Stearns that he desired to rent the vacant apartment and to move into it by the coming weekend. Stearns immediately indicated

---

[1]We draw the facts from the transcript of proceedings before the commission's hearing officer. The superior court received that transcript into evidence to pass upon Stearns' petition for mandate.

that since the apartment could be cleaned in the interim there would be no problem in Nelson's occupancy of the apartment by that time. When Nelson asked if he could leave a deposit, Stearns suggested that he write a check immediately for the required amount. Nelson stated he was not completely certain about the apartment, requesting some further time to consider the matter. Stearns suggested that Nelson nonetheless give him the deposit, promising to return the check to Nelson if he decided not to take the apartment.

When Nelson indicated again that he would write the deposit check, Stearns departed, soon returning with a lease and a credit application. Nelson asked Stearns if the credit application would cause a delay in moving into the premises, to which Stearns replied, "No, this is something for our files." Stearns indicated that Nelson could bring back the completed application later, and take occupancy that weekend. During the conversation, Stearns at no time either indicated that Nelson could not move in until the credit application had been checked or suggested that the references in the application would be checked at all.[2]

Upon learning of Nelson's experiences with Stearns, Cooper sought the assistance of the FEPC.[3] Alleging that he had "been denied the right to rent an apartment," Cooper filed a complaint before the commission on August 21. Under FEPC practices, the area supervisor consulted with Stearns in the hope of obtaining immediate relief. When Stearns refused to hold the apartment for Cooper pending completion of the credit check, the commission issued a formal accusation directed against him.

The accusation alleged, in relevant part:

"III. That on or about August 20, 1968, Ernest Cooper applied for the rental of an apartment unit in the aforesaid apartment complex . . . ; that

---

[2]Stearns contends that evidence of the Nelson-Kiedaisch-Stearns meeting introduced at the FEPC hearing is inadmissible as hearsay. Since he was absent in South Dakota, Nelson did not testify. Kiedaisch gave virtually all the incriminating testimony regarding the transaction between Nelson and Stearns. Under Government Code section 11513, subdivision (c), if Kiedaisch's evidence were hearsay, the FEPC could not have used it to support its finding of discrimination. But Stearns' contention is without merit; at the hearing Kiedaisch's testimony was introduced as proof that Nelson and Stearns spoke certain words, *not* to prove that those words represented the truth. Indeed, the parties do not question the fact that Nelson did *not* want to rent the apartment, but merely represented himself as a prospective tenant in order to unearth possible discriminatory conduct in Stearns. Likewise, the words of Stearns are not relevant for their truth, but merely to show that objectively he presented requirements to Cooper that he did not present to Nelson. Stearns' hearsay objection would only be valid were the *truth* of the Nelson-Stearns repartee at issue. (See Evid. Code, § 1200, subd. (a).)

[3]Section 35730, Health and Safety Code, specifically empowers the FEPC to prevent discrimination in housing.

said apartment complex contained a vacant unit that was advertised for rental; that respondent [Stearns], without good cause, refused to rent the apartment to the complainant [Cooper]. . . .

"VI. That respondent has pursued a rental practice that is discriminatory to persons of the Negro race; that said discrimination has tended to foment domestic strife and unrest, deprive the State and respondent of the fullest utilization of their capacities for development and advance, and substantially and adversely affects the interests of the public in general; that the correction and elimination of discrimination based on race, religion, color, national origin or ancestry is necessary to protect the public welfare, prosperity, health and peace of the people of the State of California."

An administrative hearing officer heard this accusation on March 5, 1969, and continued the case for presentation of the defense on April 30, 1969. On August 8, 1969, the FEPC adopted the proposed decision of the hearing officer. In so doing the commission found that "[a]lthough it was not established that respondent at any time overtly refused to rent the apartment to complainant, it was established that respondent . . . subjected complainant to application and investigation processes . . . which were not undertaken by him in regard to a white person in apparently similar circumstances. . . ." The commission concluded that Stearns violated Health and Safety Code section 35720, subdivision 6,[4] but found no violation of section 35720, subdivision 5,[5] and ordered Stearns to cease discrimination and pay $250 damages to Cooper.

We cannot accept Stearns' contention that the finding of discrimination is not supported by substantial evidence. Under a writ of mandate to review the findings of a state-wide administrative agency that lacks judicial power under the state Constitution, the superior court reviews the evidence on which the agency based its determination. (Code Civ. Proc., § 1094.5; see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].) In the instant case the superior court received into evidence and examined the record of the administrative proceedings, and, in denying the writ of mandate, concluded that the evidence supported the findings of the commission.

---

[4]Section 35720, subdivision 6, provides: "It shall be unlawful: For any person subject to the provisions of Section 51 of the Civil Code [the Unruh Act], as that section applies to housing accommodations, . . . to discriminate against any person because of race, color, religion, national origin, or ancestry with reference thereto."

[5]Section 35720, subdivision 5, provides: "It shall be unlawful: For the owner of any dwelling, other than a dwelling containing not more than four units, to [refuse to sell, rent or lease such housing accommodations on racial grounds]." Stearns' apartment house contained 12 units.

The record discloses substantial evidence to uphold the superior court's judgment sustaining the commission's finding of discrimination. (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) The record clearly shows that within a time-span of three hours, Stearns refused to rent an apartment to a black man until a credit investigation had been conducted, and yet offered the same leasehold to a white man without even receiving a completed credit application form. The record also shows that Stearns refused a black man's offer to secure the leasehold with a deposit, while twice soliciting such a deposit from a white man. On the basis of these facts, the court could find that Stearns discriminated on racial grounds by erecting a bureaucratic barrier to the black man's occupancy of the apartment that had not been constructed for the white man. Since such a procedure could be used completely to discourage black applicants, or at least to delay their applications until an eligible white applicant could be found to fill the vacancy, the court could justifiably conclude that Stearns' behavior constituted discrimination in housing prohibited by Health and Safety Code section 35720, subdivision 6. (Cf. *Thomas* v. *Goulis* (1966) 64 Cal.2d 884 [50 Cal.Rptr. 910, 413 P.2d 854]; *Hutson* v. *Owl Drug Co.* (1926) 79 Cal.App. 390 [249 P. 524]; *Piluso* v. *Spencer* (1918) 36 Cal. App. 416 [172 P. 412].)

We turn now to the alleged variance. ■ Courts traditionally define a variance as a failure of the proof to correspond to the pleadings. (See *Lavely* v. *Nonemaker* (1931) 212 Cal. 380, 385 [298 P. 976]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 1056, at p. 2631.) ■ Measured even by this strict standard, we see no variance between the accusation and the proof. As we read the accusation, paragraph III charges a refusal to rent, and paragraph VI alleges discriminatory practices in renting. The commission was surely entitled to pursue its action on either one of these two alternative theories. (*Tanforan* v. *Tanforan* (1916) 173 Cal. 270, 273-274 [159 P. 709].) Although the commission failed to prove the allegations of paragraph III, it succeeded in establishing those of paragraph VI, demonstrating that Stearns subjected Cooper to a screening procedure more harsh than he applied to the white applicant. The pleading and proof of discriminatory rental practices in turn supports the commission's finding that Stearns violated Health and Safety Code section 35720, subdivision 6.

■ Even assuming that the accusation charged only a refusal to rent, and not discriminatory rental practices, we do not believe that any such variance between the accusation and proof justifies a reversal of the commission's order against Stearns. As applied to civil actions, Code of Civil Procedure section 469 provides that "No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually

misled the adverse party to his prejudice in maintaining his action or defense upon the merits." (See *Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 136 [257 P.2d 643]; *Hayes* v. *Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382 [240 P.2d 580].)

The record in the present case demonstrates that no alleged variance actually misled Stearns to his prejudice. Stearns was served with the complaint one day after the claimed act of discrimination, a time when the event would be fresh in his memory. At the hearing the hearing officer made clear that he would inquire into Stearn's methods of processing and accepting rental applications: "Isn't the issue really whether or not there was discrimination practiced by Mr. Stearns at the time the application to rent the premises was made?" The hearing officer repeatedly stated that the issue was whether Stearns "handled" Cooper differently because he was black. The fact that Stearns' counsel continually but unsuccessfully objected to the hearing officer's characterization of the issue, and to the admission of evidence as to how Stearns processed rental applications, simply shows that Stearns' counsel was fully aware that this issue was being litigated.

Furthermore, after the commission's case in chief was concluded on March 5, 1969, the matter was continued until April 30 for presentation of the defense, thus giving Stearns ample time to prepare a defense on the issue of discriminatory practices. Finally, Stearns did in fact present evidence to rebut the charge of discrimination in processing rental applications. Thus under the rules applicable to civil actions, Stearns cannot complain that he suffered from a prejudicial variance. (See *Hayes* v. *Richfield Oil Corp., supra,* at p. 382.)

 Finally, this court should not impose a more rigid rule for a variance in an administrative proceeding than in a court action. · If we have concluded that under the rules of pleading applicable to court proceedings no variance occurred here, and that even if a variance did take place, no prejudice flowed from it, certainly no more onerous rule should apply to this administrative proceeding. Since such proceedings are not bound by strict rules of pleading (*Taylor* v. *Bureau of Private Investigators* (1954) 128 Cal.App.2d 219, 229 [275 P.2d· 579]), courts, in reviewing such proceedings, are even less inclined to treat a variance as reversible error. (See 1 Davis, Administrative Law Treatise (1958) § 8.06.) So long as the respondent is informed of the substance of the charge and afforded the basic, appropriate elements of procedural due process, he cannot complain of a variance between administrative pleadings and proof. (See *Dami*

v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 144, 154 [1 Cal. Rptr. 213]; *Burako* v. *Munro* (1959) 174 Cal.App.2d 688, 691 [345 P.2d 124]; *Yanke* v. *State Dept. of Public Health* (1958) 162 Cal.App.2d 600, 603 [328 P.2d 556].)

The history and objectives of the FEPC demonstrate that the rule of liberal construction of pleadings in administrative proceedings applies with special force to that commission. Originally the Legislature intended the FEPC only to remedy discrimination in employment; discrimination in housing was to be handled by civil suit under the Hawkins[6] and Unruh[7] Acts. (See *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P.2d 313].) Civil damages in housing violations, however, often amounted to less than $1,000, and defendants by means of various procedural maneuvers could force the cost of litigation above the plaintiff's expected recovery. (See Colley, *Civil Actions for Damages Arising Out of Violations of Civil Rights* (1965) 17 Hastings L.J. 189, 200-203.) The remedy, as suggested by commentators at the time, consisted of a speedy and informal administrative process for complaints as to housing discrimination. (See Kaplan, *Discrimination in California Housing: the Need for Additional Legislation* (1962) 50 Cal.L.Rev. 635, 642-643.) The Legislature responded by giving the FEPC authority to take administrative action against such discrimination. (Health & Saf. Code, § 35730 et seq.)[8] ▇ In providing an administrative remedy for housing discrimination the Legislature undertook to make sure that individual actions did not become burdened with procedural technicalities.

To achieve this end the FEPC established procedures that are as simple and uncomplicated as possible. Complaints are drafted by laymen; the commission informally attempts to eliminate discriminatory practices before instituting formal accusations; the commission, on a finding of discrimination, may fashion remedies both to correct unique cases of such practice as well as to curb its general incidence. ▇ Given the FEPC's procedure and purpose, the courts will not require the commission to impose rules of pleading and proof more stringent than those followed in civil actions.

We conclude, then, that the superior court properly upheld the commis-

---

[6]Former Health and Safety Code section 35700 et seq.

[7]Civil Code sections 51-53.

[8]Section 35730.5 explicitly empowers the FEPC to promulgate rules, receive complaints, conduct hearings and investigations, create advisory agencies and councils, and issue reports in connection with its function to prevent violations of the antidiscrimination statutes applied to housing.

sion's finding of discrimination, that the accusation and proof were not at variance, and that even if a variance did exist, no prejudice flowed from it.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.