[No. B220649. Second Dist., Div. Two. Oct. 14, 2010.]

ANTONIO MARGARITO, Plaintiff and Appellant, v.
STATE ATHLETIC COMMISSION, Defendant and Respondent.

**COUNSEL**

O'Melveny & Myers, Daniel M. Petrocelli and David Marroso for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Alfredo Terrazas, Assistant Attorney General, Karen B. Chappelle and Rene Judkiewicz, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CHAVEZ, J.**—Plaintiff and appellant Antonio Margarito (Margarito) appeals from the trial court's denial of his petition for writ of mandate seeking to compel defendant and respondent State Athletic Commission (the Commission) to set aside its order revoking Margarito's professional boxing license. The Commission revoked Margarito's license because its inspectors found gauze pads that had been adulterated with a white plasterlike substance in the protective hand wraps Margarito was to wear during a championship contest against another boxer in Los Angeles. The use of such adulterated pads is prohibited by professional boxing rule 323 (Cal. Code Regs., tit. 4, § 323) (rule 323).[1]

Margarito contends his trainer placed the adulterated pads in the hand wraps without his knowledge or consent, and that there was no legal basis to revoke his license based on strict or vicarious liability. Margarito further contends his due process rights were violated because the Commission unfairly changed its theory of liability during the course of the administrative hearing and because the prosecutor withheld exculpatory evidence.

We conclude that no due process violation occurred and that the professional boxing rules allowed the Commission to hold Margarito strictly liable for the rule violation that occurred here and to revoke his license on that basis. We therefore affirm the judgment.

## BACKGROUND

### 1. *The Parties*

Margarito is a professional boxer who has fought more than 30 times across the United States, including more than half a dozen championship fights. Margarito was licensed by the Commission as a professional boxer in California from the mid-1990's until 2009 when his license was revoked.

The Commission is the agency with sole jurisdiction over professional boxing in California and is responsible for adopting and enforcing the professional boxing rules in this state. The Commission has the authority to issue, suspend, and revoke boxing licenses in California. (Bus. & Prof. Code, §§ 18602, 18604, 18642, 18842, 18844.)[2]

---

[1] We also refer to professional boxing rule 390 (Cal. Code Regs., tit. 4, § 390), hereafter rule 390.

[2] All further statutory references are to the Business and Professions Code, unless stated otherwise.

## 2. *The Illegal Hand Wraps*

Margarito was scheduled to fight Shane Mosley (Mosley) in a welter-weight championship boxing contest in Los Angeles on January 24, 2009. Margarito's trainer, Javier Capetillo (Capetillo), was responsible for preparing the hand wraps, bandages, and tape used to protect Margarito's hands during the contest. Capetillo was a professional trainer who had worked with many professional boxers during his 38-year career as a trainer. During his 11 years as Margarito's trainer, Capetillo was the only person who wrapped Margarito's hands before a boxing contest.

Before the contest with Mosley, Capetillo was wrapping Margarito's hands while four Commission inspectors and Mosley's trainer observed the process. After Capetillo finished wrapping Margarito's right hand, Mosley's trainer asked the inspectors to physically inspect a premade gauze "knuckle pad" insert that Capetillo was about to wrap over Margarito's left hand. The inspectors found that the inner layers of the pad were discolored and that the pad felt harder than it should have. In a report prepared after the inspection, Commission Inspector Che Guevara (Guevara) described the gauze pad removed from Margarito's left hand as "dirty-looking" and smeared with a white substance that looked like plaster and was hard to the touch. Concluding that the pad violated the rules, the inspectors confiscated the pad and instructed Capetillo to prepare a new one.

Mosley's trainer then asked the inspectors to examine the gauze insert in Margarito's already wrapped right hand. Margarito insisted there was nothing in the right hand wrapping, and held his hand out saying, "Touch it. Feel it. Go ahead. There is nothing in it." The inspectors ordered the wrapping removed and found a similar improperly hardened pad, which they confiscated. After Capetillo prepared two new knuckle pads, the inspectors approved Margarito's hand wraps and allowed Margarito to proceed with the boxing match.

In a letter dated January 27, 2009, the Commission notified Margarito that his boxing license was temporarily suspended pending a final determination of the case. The Commission explained the reason for the suspension as follows: "This action is taken because of your recent participation in what appears to be a violation of rule 323. Rule 323 limits the use of gauze and tape on an athlete's hands and requires that both contestants be represented while the gauze and tape are applied. The rule also prescribes the manner in which the gauze and tape is applied to an athlete's hands. Here, it appears

that a foreign substance was used in the hand-wraps in violation of Rule 323. [¶] Additionally, Commission rule 390 allows the commission to revoke, fine, suspend or otherwise discipline any licensee who 'conducts himself or herself at any time or place in a manner which is determined by the Commission to reflect discredit to boxing.' " The Commission set a formal hearing on the matter for February 10, 2009.

### 3. Administrative Hearing

At the February 10, 2009 hearing, Commission Inspectors Guevara, Dean Lohuis (Lohuis), and Mike Bray (Bray) all testified that they felt the knuckle pads Capetillo initially placed in Margarito's hand wraps before the Mosley fight and that the pads felt harder than allowed by the applicable rules and were confiscated. After feeling one of the confiscated pads at the hearing, Margarito admitted that he felt something hard. Capetillo admitted that the confiscated pads violated the applicable rules, and acknowledged that had they been used, they could have seriously injured Margarito's opponent.

The commissioners at the hearing inspected one of the pads that had been confiscated from Margarito's hand wraps and compared it to the soft gauze that is used to wrap a boxer's hand before a contest. The other confiscated pad was sent to the Department of Justice's forensic laboratory for evaluation, where it was photographed under a microscope at six times magnification. The photographs were presented as evidence at the hearing.

At the conclusion of the hearing, all seven commissioners voted unanimously to revoke Margarito's license.

### 4. The Commission's Decision

In a written decision issued on March 31, 2009, the Commission found that the knuckle pads removed from Margarito's hand wraps before the Mosley fight on January 24, 2009, had been adulterated with a white plasterlike substance. The Commission concluded that the use of adulterated knuckle pads by a boxer seriously endangers the boxer's opponent and gives the boxer an unfair advantage that causes discredit to boxing. The Commission further concluded that "[b]ecause [Margarito] violated Commission Rule 323 there is sufficient cause for revocation of [Margarito's] boxing license pursuant to Commission Rule 390 and Business and Professions Code section 18841."

The Commission rejected Margarito's argument that he could not be held responsible for violating rule 323 because he did not know that Capetillo had inserted the illegal pads into his hand wraps and noted that "[t]he Commission's laws and rules, enacted to protect public health and safety, do not require either knowledge or intent for a violation to occur." The Commission stated: "Because of the serious physical consequences which could have resulted to the other boxer from the use of boxing gloves loaded with illegal knuckle pads, the appropriate penalty is revocation."

## 5. *Mandate Proceedings*

After revocation of his license, Margarito filed a petition for writ of mandate to set aside the Commission's decision, arguing that professional boxing rules 323 and 390 do not provide for strict or vicarious liability and that the Commission erred as a matter of law by revoking his license on that basis. Margarito argued that the Commission violated his due process rights by changing its theory of liability during the course of the administrative hearing. He maintained that the Commission's January 27, 2009 "charging" letter stated that the enforcement action against him was based on specific language in rule 390 authorizing the Commission to sanction a licensee who "conducts himself or herself . . . in a manner which is determined by the commission to reflect discredit to boxing" but that the Commission changed its theory to one of strict liability during the course of the hearing. Margarito further contended that the Commission violated his due process rights by withholding key evidence.

The trial court denied Margarito's petition, concluding that a "violation of rule 323 . . . in and of itself is punishable under the second prong of section 390." The trial court expressly rejected Margarito's argument that the Commission's "charging" letter initially suspending Margarito's license misinformed him about the proposed charges and precluded the Commission from holding Margarito strictly liable for violating rule 323: "I don't think that there's anything in the administrative record—at least what you've cited me to, that showed that [Margarito] was mischarged or misinformed about what he was being charged with." In its written ruling, the trial court stated: "The Commission was correct in determining that [Margarito's] license can be revoked for his violation of the hand wrap rule whether [Margarito] knew what his trainer was doing or not."

This appeal followed.

## DISCUSSION

### I. Standard of Review

" ' " 'In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]' [Citation.]" ' [Citation.]" (*Corrales v. Bradstreet* (2007) 153 Cal.App.4th 33, 47–48 [62 Cal.Rptr.3d 440].) In addition, "[t]he interpretation of a statute is a legal issue subject to de novo review. [Citation.]" (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491 [96 Cal.Rptr.3d 900].)

Margarito's challenge to the Commission's authority to revoke his license under the professional boxing rules, and his challenge to the fairness of the administrative proceedings below present questions of law that we review de novo.[3] (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 542 [133 Cal.Rptr.2d 527].)

### II. Applicable Law

■ The Boxing Act (§ 18600 et seq.) accords the Commission sole jurisdiction over professional boxing in the state (§ 18640), and authorizes the Commission to adopt and amend rules and regulations "necessary to enable it to carry out the laws relating to boxing" (§ 18611). The Boxing Act also authorizes the Commission to license professional boxers (§ 18642) and to revoke a license "for any violation or attempted violation of [the Act], any rule or regulation adopted pursuant thereto, or for any cause for which a license may be denied" (§ 18841). The Boxing Act mandates that in carrying out these statutory responsibilities, the Commission must make protection of the public its highest priority: "Protection of the public shall be the highest priority for the State Athletic Commission in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount." (§ 18602.1.)

---

[3] Because the underlying facts in this case were undisputed, and there was no claim that the Commission's factual findings were not supported by the evidence, we need not determine whether the trial court's review of the Commission's revocation decision was governed by the substantial evidence standard, or whether the court was authorized to exercise its independent judgment on the evidence. (See *Rudolph v. Athletic Commission* (1960) 177 Cal.App.2d 1, 7–8 [1 Cal.Rptr. 898]; § 18841; 8 Witkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, §§ 260, 290, pp. 1168, 1207–1208.)

Pursuant to this statutory authority, the Commission has adopted professional boxing rules. (Cal. Code Regs., tit. 4, § 201.) Rule 323 specifies the materials that may be used to wrap a boxer's hands during a contest and prescribes the manner in which those materials may be applied. It states: "Bandages shall not exceed the following restrictions: [¶] One winding of surgeon's adhesive tape, not over one and one-half inches wide, placed directly on the hand to protect that part of the hand near the wrist. Said tape may cross the back of the hand twice but shall not extend within one inch of the knuckles when hand is clenched to make a fist. [¶] Contestants shall use soft surgical bandage not over two inches wide, held in place by not more than ten yards of surgeon's adhesive tape for each hand. Not more than twenty yards of bandage may be used to complete the wrappings for each hand. [¶] Bandages shall be applied in the dressing room in the presence of a commission representative and both contestants. Either contestant may waive his privilege of witnessing the bandaging of his opponent's hands."

■ Rule 390 governs enforcement. It authorizes the Commission to revoke a license under any of three circumstances: (1) the licensee violates state law, (2) the licensee violates the rules of the Commission, or (3) the licensee conducts himself or herself in a manner deemed to discredit boxing. Rule 390 states: "Any licensee who violates the laws of the State of California, with the exception of minor traffic violations, or the rules of the Athletic Commission, or who fails or refuses to comply with a valid order of a commission representative, or who conducts himself or herself at any time or place in a manner which is deemed by the commission to reflect discredit to boxing, may have his or her license revoked, or may be fined, suspended or otherwise disciplined in such manner as the commission may direct."

III.   *Interpretation of the Regulations*

■ Margarito contends rules 323 and 390 do not allow the Commission to hold him strictly liable for the rule violation that occurred here. This contention concerns the interpretation of administrative regulations, which is subject to the same legal principles applicable to the interpretation of a statute. (*County of Sacramento v. State Water Resources Control Bd.* (2007) 153 Cal.App.4th 1579, 1586 [64 Cal.Rptr.3d 302] (*County of Sacramento*).) Under those principles, we look first to words of the regulations themselves as the most reliable indicator of regulatory intent. The words of the regulation should be given their ordinary and usual meaning and should be construed in context. If the language is clear and unambiguous, there is no need for interpretation, nor is it necessary to resort to other indicia of regulatory or legislative intent. (*Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 477 [101 Cal.Rptr.3d 670].)

■ An administrative agency's interpretation of its own regulations is generally given great weight by courts, and a reviewing court must "defer to an agency's interpretation of a regulation involving its area of expertise, ' "unless the interpretation flies in the face of the clear language and purpose of the interpretive provision." [Citation.]' [Citation.]" (*County of Sacramento, supra*, 153 Cal.App.4th at p. 1587.) The relevant inquiry is whether the interpretation offered by the agency is reasonable in light of the language and purpose of the regulation. (*Exxon Mobil Corp. v. Office of Environmental Health Hazard Assessment* (2009) 169 Cal.App.4th 1264, 1280 [87 Cal.Rptr.3d 580] (*Exxon Mobil*).)

Rule 323 by its terms expressly applies to "contestants" such as Margarito. It states in relevant part: "Contestants shall use soft surgical bandage not over two inches wide, held in place by not more than ten yards of surgeon's adhesive tape for each hand. Not more than twenty yards of bandage may be used to complete the wrappings for each hand." Margarito does not dispute that the adulterated knuckle pads found in his hand wraps violated rule 323. The plain language of rule 390 allows the Commission to revoke his license for such violation: "Any licensee who violates . . . the rules of the Athletic Commission . . . may have his or her license revoked . . . ."

Margarito claims he did not know adulterated pads had been used and that he did not direct, authorize, or ratify the use of such pads. He argues that without a culpable mens rea, he cannot be held liable for violating rule 323 unless the Commission's rules expressly provide for strict liability. We disagree.

Neither rule 323 nor rule 390 contains qualifying language such as "knowingly" or "intentionally." The absence of such qualifying language indicates the Commission did not intend guilty knowledge or intent to be elements of a violation. (See *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1845 [16 Cal.Rptr.2d 385] (*Khan*).) The Commission's interpretation is also consistent with its statutory duty to make protection of the public its "highest priority." (§ 18602.1.) Section 18602.1 expressly provides that "[w]henever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

■ The Commission's decision to revoke Margarito's license based on principles of strict liability is also consistent with California case law. Courts have routinely upheld an agency's decision to sanction a licensee based on principles of strict liability. (See, e.g., *California Real Estate Loans, Inc. v. Wallace* (1993) 18 Cal.App.4th 1575, 1583–1584 [23 Cal.Rptr.2d 462] [broker's license revoked]; *Khan, supra*, 12 Cal.App.4th at pp. 1838, 1844–1845

[medical license revoked under statute sanctioning employment of an unlicensed person to engage in practice of medicine]; *Aantex Pest Control Co. v. Structural Pest Control Bd.* (1980) 108 Cal.App.3d 696, 701–702 [166 Cal.Rptr. 763] [license revoked under statute sanctioning any " '[f]ailure to comply in the sale or use of insecticides' "].)

■ The Commission's interpretation of rules 323 and 390 to hold Margarito strictly liable for the violation that occurred here was reasonable in light of the language and purpose of those rules.[4] (*County of Sacramento, supra,* 153 Cal.App.4th at p. 1587; *Exxon Mobil, supra,* 169 Cal.App.4th at p. 1280.) The trial court accordingly did not err by denying Margarito's petition for writ of mandate.

## IV. *Margarito's Challenge to the Pleading*

Margarito contends the Commission may not sanction him for violation of rule 323 because the Commission's January 27, 2009 "charging" letter invoked only the "discredit to boxing" language of rule 390, which focuses on his own conduct and not that of Capetillo, and did not cite the specific regulatory language which allows the Commission to sanction "[a]ny licensee who violates . . . the rules of the Athletic Commission." This contention raises a question of pleading. (*Cooper v. State Board of Equalization* (1955) 137 Cal.App.2d 672, 679 [290 P.2d 914] (*Cooper*).) As we discuss, the Commission's letter adequately pled the allegations that were the basis for revoking Margarito's license.

The Commission's January 27, 2009 letter articulated two bases for sanctioning Margarito: (1) "a foreign substance was used in the hand-wraps in violation of Rule 323" and (2) "[a]dditionally, Commission rule 390 allows the commission to revoke, fine, suspend or otherwise discipline any licensee who 'conducts himself or herself at any time or place in a manner which is determined by the Commission to reflect discredit to boxing.' " The Commission's letter made sufficiently clear that Margarito was being sanctioned for violating rule 323.

■ The Commission's letter also made sufficiently clear that Margarito could be sanctioned for violating rule 323 based on the conduct of his trainer, Capetillo. "It is well settled that a pleading alleging that defendant committed

---

[4] Because we conclude that rules 323 and 390 allow the Commission to revoke a boxer's license for violation of rule 323 without a showing of guilty knowledge or intent, i.e., on the basis of strict liability, we need not address the parties' arguments as to whether principles of vicarious liability might also apply.

a certain act is simply an allegation that in legal effect the defendant is responsible for the act—i.e., that defendant through his agent committed the act or that defendant personally committed it. Either can be proved under an allegation that 'defendant' committed the act. [Citation.]" (*Cooper, supra*, 137 Cal.App.2d at p. 679.)

## V. *Due Process Arguments*

Margarito contends his due process rights were violated because the Commission's January 27, 2009 letter did not give him meaningful advance notice of the charges against him and because the Commission withheld critical evidence before the hearing. We find that no due process violation occurred.

### A. *Commission's Alleged Change of Theory*

■ "Due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation.]" (*Southern Cal. Underground Contractors, Inc. v. City of San Diego, supra*, 108 Cal.App.4th at p. 543.) As discussed, the Commission's January 27, 2009 letter gave Margarito sufficient meaningful advance notice of the charges against him—hand wraps that violated rule 323 and conducting himself in a manner reflecting a discredit to boxing. Both types of violations are sanctionable under rule 390.

■ Margarito contends the Commission initially charged him with personally violating rule 323, and then improperly changed its theory during the course of the administrative proceeding to one of strict liability. He maintains the Commission was precluded from sanctioning him for Capetillo's actions because the allegations contained in the Commission's January 27, 2009 letter focused exclusively on Margarito's own conduct—"This action is taken because of *your recent participation* in what appears to be a violation of rule 323" and cited only the provision of rule 390 that authorizes the sanctioning of a "licensee *who 'conducts himself* . . . in a manner . . . to reflect discredit to boxing.' " (Italics added.) We do not read the allegations so narrowly. The Commission's letter goes on to state that the presence of a foreign substance in Margarito's hand wraps violated rule 323: "Here, it appears that a foreign substance was used in the hand-wraps in violation of Rule 323." "[Administrative] proceedings are not bound by strict rules of pleading . . . . So long as the respondent is informed of the substance of the charge and afforded the basic, appropriate elements of procedural due process, he cannot complain of a variance between administrative pleadings and proof. [Citations.]" (*Stearns v. Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 213 [98 Cal.Rptr. 467, 490 P.2d 1155], citation omitted.)

Margarito cites *Smith v. State Bd. of Pharmacy* (1995) 37 Cal.App.4th 229 [43 Cal.Rptr.2d 532] as support for his argument that the Commission's charging letter did not notify him that the Commission would seek to hold him strictly liable for the illegal hand wraps. That case, however, is distinguishable. In *Smith*, a pharmacist was informed that the California State Board of Pharmacy intended to revoke his license for personally dispensing controlled substances in violation of applicable laws. The evidence adduced at the disciplinary proceeding demonstrated, at most, negligent supervision of other pharmacy employees. During the hearing, the pharmacist complained that had he been apprised of the negligence charge, he would have brought an expert witness to testify as to the appropriate standard of care. The Court of Appeal reversed, finding that the Board's accusation failed to inform the pharmacist that it was going to rely on a negligence theory as the basis for revoking his license and that such failure violated the pharmacist's due process rights. (*Id.* at p. 241.)

Here, the Commission's letter informed Margarito of the specific violation of which he was accused—hand wraps that violated rule 323. At the hearing, Margarito's counsel argued against holding him strictly liable for that violation. He did not object that Margarito had not been apprised of a strict liability charge, nor did he argue that he would have presented additional evidence to rebut that charge. No due process violation occurred.

### B.  *Alleged Withholding of Evidence*

Margarito contends the Commission withheld the following "three key pieces of evidence" in violation of his due process rights: (1) statements made by inspectors Lohuis and Bray after they submitted their written reports of the events on January 24, 2009; (2) photographs of the knuckle pad taken from Margarito's left hand wrap; and (3) forensic test results on the gauze knuckle pads. The record shows that the Commission did not withhold any evidence available at the time of the hearing.

#### 1.  *Witness Statements*

Margarito contends the Commission "suppressed" written statements by inspectors Lohuis and Bray prepared after their initial written reports describing the events of January 24, 2009, but before the February 10, 2009 hearing and purportedly sent to the Commission before the hearing. Margarito claims that "[i]n those subsequent written statements, the inspectors notified the Commission's attorney that they had reviewed Inspector Guevara's report and

that key factual statements were 'not true' and 'inaccurate.' " He further claims these statements were not disclosed to his counsel until April 2009, more than two months after the hearing. Without these statements, Margarito contends he was unable to attack Inspector Guevara's credibility at the hearing.

Apart from their initial written reports concerning the incident prepared in January 2009, the record contains no written statements by Inspectors Lohuis and Bray that are dated before April 2009. None of the written statements prepared in April 2009 could have been disclosed to Margarito's counsel before April 2009.

The record does contain an e-mail exchange on February 5, 2009, between the Commission's assistant executive officer and the Commission's attorney in connection with the Margarito disciplinary proceeding. The e-mail from the Commission's officer to the attorney states: "Did Dean [Lohuis] really state in front of both you and Earl that he wanted the portion of Che's [Guevara's] statement in reference to the 'approval of the right hand' to be left out of the testimony? Che stated that Dean wanted to let the right hand go through because it was 'approved' even though Che never approved it. [¶] Did he really want that left out of the testimony?" The attorney's e-mail response states: "Yes he did. Che clarified things and I told them both that I would decide what we went into on the record."

The e-mail exchange refers to a portion of a written report prepared by Inspector Guevara on January 27, 2009, recounting the events that occurred after the inspectors confiscated the illegal knuckle pad from Margarito's left hand wrap: "Nazim Richardson then said he was not comfortable with the completed hand wrap on the right hand. At that point Dean Lohuis said 'the commission has already approved that one', and that Mr. Capetillo will not need to remove it. I then turned to Dean and told him that the right hand will need to be removed because if it is on his left hand it would most likely be on the right hand. He agreed with me."[5]

There is nothing in the record that supports Margarito's contention that the prosecutor withheld key evidence needed to impeach Inspector Guevara's credibility. Moreover, Margarito failed to establish that he suffered any

---

[5] Lohuis was sanctioned in April 2009 for attempting to alter Guevara's written statement before the Margarito hearing. While Lohuis's disciplinary proceeding was pending in April 2009, he submitted his own written statement and that of Inspector Bray challenging Guevara's account concerning Lohuis's reluctance to remove Margarito's right hand wrap before the Mosley contest.

resulting prejudice. There was overwhelming evidence that the pads removed from Margarito's hand wraps violated rule 323. The presence of the illegal pads in Margarito's hand wraps was confirmed by multiple eyewitnesses, including Lohuis and Bray. Margarito failed to establish a reasonable probability of a more favorable result had he been apprised of Lohuis's attempt to alter Guevara's written report before the February 10, 2009 hearing. (See *Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2009) 176 Cal.App.4th 1249, 1258 [98 Cal.Rptr.3d 559].)

### 2. *Photographs*

Margarito contends the Commission violated his due process rights by withholding photographs of the left hand knuckle pad taken by the Department of Justice's forensic laboratory that the prosecutor introduced as evidence at the February 10, 2009 hearing. The record shows that the photographs were not available before February 9, 2009, the night before the hearing and were therefore not deliberately "withheld" from Margarito. Margarito's counsel was provided with a copy of the photographs at the hearing.

Margarito fails to establish any prejudice resulting from the admission of the challenged photographs into evidence. The record contains ample evidence, apart from the photographs, to support the Commission's finding that the gauze knuckle pads had been adulterated with a white substance and were impermissibly hard, in violation of rule 323. Three Commission inspectors testified at the hearing that they felt the knuckle pads removed from Margarito's hand wraps and found them to be harder than allowed by the applicable rules. Inspector Lohuis's January 27, 2009 report describing the gauze pad confiscated from Margarito's left hand wrap states: "It appeared that some sort of liquid had been applied to this smaller pad, which was a violation of the rules." The commissioners themselves examined one of the confiscated pads at the hearing. No due process violation occurred.

### 3. *Forensic Test Results*

There is no merit to Margarito's claim that the Commission violated his due process rights by "withholding" the results of key forensic tests done by the Department of Justice's forensic laboratory on one of the gauze pads removed from his hand wraps. The record shows that the laboratory results did not yet exist on the date of the hearing. The Commission accordingly did not base its decision to revoke Margarito's license on those test results.

## DISPOSITION

The judgment is affirmed. The Commission is awarded its costs on appeal.

Boren, P. J., and Doi Todd, J., concurred.