Filed 3/3/25  Barber v. California State Personnel Board CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PATRICK BARBER,<br><br>   Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD, et al.<br><br>  Defendants and Respondents,<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>   Real Party in Interest. | 2d Civil No. B334007<br>(Super. Ct. No. 56-2020-00540746-CU-WM-VTA)<br>(Ventura County) |

The Department of Corrections and Rehabilitation (Department) dismissed Patrick Barber from his position as a parole agent assigned to the Ventura Youth Correctional Facility (the facility) after Barbern drove while intoxicated, brought his personal cell phone into the facility, and was repeatedly

discourteous, hostile and unprofessional toward his coworkers. Barber appealed to the State Personnel Board (SPB or the Board) which, after an evidentiary hearing, upheld his dismissal. Barber petitioned for a writ of mandate to reverse that decision. The trial court denied the petition.

Appellant contends the trial court erred because his driving under influence (DUI) conviction was "expunged" under Penal Code section 1203.4, the facts found by the SPB differed from those alleged in the Department's Notice of Adverse Action (NOAA), the SPB's factual findings were not supported by substantial evidence, the Department violated Government Code sections 3305 and 3306 because it did not allow him to review the complaints in a timely manner, and because the SPB abused its discretion when it sustained the penalty of dismissal. We affirm.

*Facts*

Appellant began working for the Department in 1998 and was later promoted to the position of parole agent at the facility. In 2019, the Department served appellant with a NOAA dismissing him from his employment based on seven instances of misconduct.

The DUI. The NOAA alleged that appellant drove a car with a blood alcohol content above the legal limit. It further alleged appellant provided intentionally misleading information to the arresting officer about the number of drinks he had and why he was using breath mints. At the evidentiary hearing, the arresting officer described appellant has having been "honest and cooperative throughout the stop."

The SPB found that appellant's conduct in driving under the influence was an "inexcusable neglect of duty" and a "failure of good behavior" because, as a peace officer, he had a duty to

2

abide by the law and to serve as a role model for the youth he encountered at work. (Gov. Code, § 19572, subds. (d), (t).) The Department failed, however, to prove appellant was dishonest during his arrest.

Appellant pled nolo contendere to the DUI charge and was placed on probation. About two years after the SPB's order, appellant successfully completed probation. He was found eligible for relief under Penal Code section 1203.4 and permitted to withdraw his plea. The complaint against appellant was dismissed.

Cell Phone Possession. Department policy prohibits personal cell phones within any institution, unless approved by the warden and accompanied by a doctor's statement of medical necessity. Appellant's supervisor held a "Work Improvement Discussion" with him about the policy. He did not want to review it and refused to sign paperwork documenting the discussion. Six days later, appellant attended a meeting with his supervisor and two other senior officers during which he removed his personal cell phone from his pocket. Appellant admitted this was his personal cell phone. Although he claimed to have a medical reason for carrying the phone, appellant did not have the facility superintendent's permission to bring it into the facility. There was no evidence he had a doctor's statement documenting his need for the phone until after he was disciplined for possessing it.

The SPB found appellant was aware of the policy and willfully disobeyed it. This conduct was an inexcusable neglect of duty and a failure of good behavior. (Gov. Code, § 19572, subds. (d), (o), (t).) In the SPB's view, this conduct supported the Department's decision to dismiss appellant.

3

Discourteous and Hostile Conduct Toward Co-Workers. The NOAA alleged five incidents in which appellant was discourteous or hostile toward his co-workers or toward youth at the facility. One allegation was dismissed by the SPB on the ground that the Department presented no evidence relating to it.

The Second Incident (King). The NOAA described an incident in which Youth Correctional Counselor (YCC) King was escorting a youth, Orozco, to his cell when appellant entered the housing unit. Orozco stopped walking with YCC King and started talking to appellant. King told the ward that he would receive a level one rules violation for failing to go to his room. Appellant told King that he would take Orozco to the dayroom. King complained that appellant was undermining him. Appellant then yelled, "'Fuck you,'" and "'shut the fuck up,'" to King. The NOAA described appellant's tone as "aggressive" and noted that his comments were made in front of other staff and youth.

The SPB found that appellant did not hear King order Orozco to go to his room. After talking to Orozco, appellant said he would take Orozco to the day room to play cards. King and appellant exchanged words after King stated that appellant was undermining him. During their argument, appellant used profanity and said that King would not get fired because of his status as a minority. The interaction was witnessed by Orozco, other youth, and other staff.

The SPB concluded that appellant engaged in a "heated dispute" with King, speaking in an aggressive tone and using profanity. Appellant also made an offensive comment about King's minority status. The argument violated multiple Department policies because, among other things, appellant

4

displayed disrespect or contempt for others, disrupted normal work functions and harassed a co-worker based on his protected status. This behavior was an inexcusable neglect of duty, discourteous treatment, willful disobedience of department policies and a failure of good behavior. (Gov. Code, § 19572, subds. (d), (m), (o), (t).)

The Third Incident (Banda). The NOAA alleged that a youth named Banda was walking near the youth correctional counselor's desk in a living unit when he yelled at another youth. Appellant responded by yelling, "'shut the fuck up'" to Banda. Banda said something about going to the central kitchen and appellant repeated the statement. He was overheard by other staff and wards.

The SPB found that Banda was locked in his room when he yelled to another staff member that he needed to go to the central kitchen. While that staff member called the kitchen to confirm, appellant yelled at Banda, "'shut the fuck up.'" Banda responded and appellant repeated his statement. The exchange was playful and joking. Banda showed no signs of being angry after the interaction. The SPB found that appellant used profanity but was not discourteous during this incident. Using profanity was an inexcusable neglect of duty, willful disobedience of Department policy against the use of profanity, and a failure of good behavior. (Gov. Code, § 19572, subds. (d), (o), (t).)

The Fourth Incident (Orr). The NOAA alleges that appellant was in a day room, playing cards with three youths when another staff member, YCC Orr, instructed a youth to go into the unit's back yard. Most youths obeyed that instruction, except for three who were playing cards with appellant. They continued their game. Orr asked appellant to stop so the

5

correctional counselors could "run their program." Appellant replied that he would take them into the backyard after they finished their game. Orr repeated his request. The youth told appellant to ignore YCC Orr. Appellant continued to play cards and did not respond to Orr. At this point, the supervisor instructed appellant to stop playing cards and allow the correctional counselors to move the youth into the back yard as scheduled. After they left the area, appellant made several insulting statements to Orr. Appellant went into the senior youth correctional counselor's office and continued yelling insults about Orr.

The SPB concluded appellant did not "yell" during this argument. Instead, he "spoke in an animated manner with an elevated voice that Orr perceived as yelling, but not loud enough to be heard outside." The SPB found that appellant ignored Orr's request to stop playing cards, which was "inappropriate" because it "undermined Orr's authority with the youths." Appellant violated multiple Department policies. His actions were "unprofessional, were an open display of disrespect, and disrupted operations." The SPB concluded this incident constituted inexcusable neglect of duty, discourteous conduct, willful disobedience of department policies and a failure of good behavior.

The Fifth Incident (Vigil). The NOAA alleged that, during a team meeting, Parole Agent Vigil described being physically assaulted by a female youth the previous day. While Vigil was talking, appellant "interrupted her and said it was good that PA Vigil had been assaulted, or words to that effect." Appellant also said he wished he had been there to see Vigil being attacked. Appellant laughed and spoke in a loud, abrasive voice.

6

The SPB found that, during the meeting, Vigil described her assault and appellant replied, "'Good. I wish I could have seen it. You probably deserved it.'" Appellant claimed at the hearing that he meant "he wished he could have been there to help Vigil." The SPB found this claim "no[t] credible." Instead, the SPB concluded appellant's comments violated a Department policy against violent acts or threats against others.

The Penalty. The SPB found that dismissal was an appropriate penalty for this misconduct because, as a peace officer, appellant should be held to the highest standard of behavior. His conduct in ignoring or disobeying Department policies and in breaking the law by driving under the influence caused great harm to the public service. Appellant also showed a lack of self-control because he engaged in "aggressive and immature confrontations" with his co-workers. Because he cursed at staff and ignored the requests of other staff members, appellant's conduct "will undoubtedly cause the wards to believe it is acceptable for them to do the same." He also caused "discord and undermined working relationships" at the facility. His statements to Vigil, in particular, undermin[ed] staff safety and security.

The SPB concluded the likelihood of recurrence was high. In the recent past, appellant had twice been placed on notice about unprofessional and discourteous conduct yet he continued to behave inappropriately toward his co-workers. He expressed no remorse for his behavior and even contended that his behavior toward Orr and Vigil was justified. The SPB found "ample support for dismissal."

The Writ Petition.  Appellant filed a petition for writ of mandate to direct the SPB to vacate its decision, reinstate him and award him back pay.  The trial court denied the petition.

*Contentions*

Appellant contends the SPB erred in relying on his DUI conviction as a basis for his dismissal because the conviction was expunged or dismissed pursuant to Penal Code section 1203.4. He further contends the SPB's factual findings regarding his misconduct are not supported by substantial evidence and that he was denied due process because those findings were substantially different from the facts alleged in the NOAA. Appellant also contends the Department did not comply with its obligations under Government Code sections 3305 and 3006.

*Standard of Review*

We review appellant's challenge to the SPB's order under the same standards as the trial court.  "The question we must answer is whether the agency has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion by the agency. [Citations.]  Abuse of discretion 'is established if the respondent [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' [Citation.]"  (*Rodgers v. State Personnel Board* (2022) 83 Cal.App.5th 1, 10-11 (*Rodgers*).)

On appeal from the trial court's judgment denying the petition for writ of mandate, "we 'independently determine[] whether substantial evidence supports *the [Board's] findings*, not the trial court's conclusions.' [Citation.]"  (*Carrasco v. State Personnel Board* (2021) 70 Cal.App.5th 117, 135-136 (*Carrasco*); see also *Cate v. State Personnel Bd.* (2012) 204 Cal.App.4th 270,

8

281 (*Cate*) ["The trial court reviews decisions of the SPB for substantial evidence, considering ""all relevant evidence in the administrative record including evidence that fairly detracts from the evidence supporting the agency's decision'. . .""].) We independently review the SPB's and the trial court's decisions on questions of law. (*Barber v. Department of Corrections and Rehabilitation* (2012) 203 Cal.App.4th 638, 644.)

Because the State Personnel Board is an agency with adjudicatory powers created by the California Constitution, its decisions are entitled to judicial deference. (*Palmieri v. State Personnel Board* (2018) 28 Cal.App.5th 845, 860.) "'We do not substitute our own judgment if the board's decision ""is one which could have been made by reasonable people . . . .""'" (*Carrasco, supra,* 70 Cal.App.5th at p. 136, quoting *Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701.) Similarly, we review the penalty imposed by the SPB under the deferential abuse of discretion standard. (*Pasos v. Los Angeles County Civil Service Commission* (2020) 52 Cal.App.5th 690, 700 (*Pasos*).) In particular, we may not substitute our discretion for that of the SPB concerning the degree of punishment imposed. (*Ibid.*)

*Discussion*

The DUI. Appellant contends the SPB and the trial court erred in relying on his DUI conviction as a basis for the dismissal because his conviction was "expunged," under Penal Code section 1203.4. He is incorrect. First, appellant's dismissal was not based on his conviction of driving under the influence. Rather, as the NOAA stated, the disciplinary action was based on appellant's "conduct, in driving a car with a [blood alcohol content] BAC above the legal limit . . . ." Similarly, the SPB noted that appellant "ignored departmental policy when he broke

9

the law by driving under the influence of alcohol . . . . When an employee ignores or disobeys clear department policy, the harm to the public service is evident." Dismissal of the criminal complaint against appellant does not alter the fact that he drove while under the influence of alcohol.

Penal Code section 1203.4 "does not purport to render the conviction a legal nullity." (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1230.) The statute cannot erase the past or create a legal fiction that a probationer did not engage in illegal conduct. A dismissal under the statute "restores the probationer in most respects to preconviction status." (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1468.) It does not, however, prohibit use of the conviction as a basis for "nonpenal restrictions or qualifications imposed for public protection, such as . . . qualification for employment as a peace officer [citation] . . . ." (*Vasquez, supra,* at p. 1230.)

A "failure of good behavior either during or outside of duty hours, which is of such a nature that it causes discredit to the appointing authority or the person's employment," is cause for the discipline of a state employee. (Gov. Code, § 19572, subd. (t).) Violating the law is a failure of good behavior because "[a] peace officer who breaks the law he is sworn to uphold discredits himself and his employer." (*Ramirez v. State Personnel Board* (1988) 204 Cal.App.3d 288, 293 (*Ramirez*).) This is true even when the employee's illegal conduct does not result in prosecution or conviction. (*Telish v. State Personnel Board* (2015) 234 Cal.App.4th 1479, 1483-1483 (*Telish*) [state Department of Justice special agent dismissed after district attorney declined to prosecute him for threatening and physically assaulting subordinate employee with whom the agent had a consensual

10

sexual relationship]; *Van Winkle v. County of Ventura* (2007) 158 Cal.App.4th 492, 495-496 [deputy sheriff dismissed for embezzling sheriff's department property after district attorney declined to prosecute].)

The record here contains substantial evidence that appellant violated the law by driving while under the influence of alcohol. In addition to the testimony of the arresting officer, the record of the SPB hearing includes the results of appellant's field sobriety tests and breath test. These establish that, at the time of his arrest, appellant had a blood alcohol content above the legal limit. In addition, appellant admitted to the arresting officer that he had consumed margaritas before driving. This evidence supports the SPB's conclusion that appellant violated the law and that he was properly subject to discipline for inexcusable neglect of duty and failure of good behavior. (Gov. Code, § 19572, subds. (d), (t).)

The Cell Phone. Appellant admitted in the SPB hearing that he brought his personal cell phone into the facility. He did not document a medical need to possess the phone until after he was found to possess it. There was no evidence that appellant had permission from the superintendent of the facility to possess the phone. This is substantial evidence that appellant willfully disobeyed department policy. (Gov. Code, § 19572, subd. (o); *Flowers v. State Personnel Board* (1985) 174 Cal.App.3d 753, 759-760.)

Due Process. The SPB's factual findings differed in some respects from those alleged in the NOAA. Appellant contends he was deprived of due process because he did not receive adequate notice of, or an opportunity to rebut the facts as found by the SPB. We are not persuaded.

11

Due process dictates that "'"a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."'" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212, quoting *Mathews v. Eldridge* (1976) 424 U.S. 319, 348.)  When a state employee is subject to discipline, due process requires that the employee receive "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 215.)

"'Disciplinary action cannot be founded upon a charge not made' [citation], and neither [Government Code,] section 19575.5 nor any other provision of law permits CDCR to amend the charging document after they have taken their disciplinary action." (*Rodgers, supra*, 83 Cal.App.5th at p. 12.)  Although administrative agencies are not subject to strict rules of pleading (*Stearns v. Fair Employment Practice Commission* (1971) 6 Cal.3d 205, 213), the employee is entitled to "notice that the proposed penalty could be imposed *based on the facts that were found true* after the evidentiary hearing . . . ." (*Rodgers, supra,* at p. 12.)  Notice is sufficient if the employee "is informed of the substance of the charge and afforded the basic, appropriate elements of procedural due process . . . ." (*Stearns, supra*, at p. 213.)  So long as that standard is met, the employee "cannot complain of a variance between administrative pleadings and proof." (*Ibid.*)  Differences between the facts alleged in an NOAA and those found at an evidentiary hearing do not justify reversal of an SPB order unless the differences are material and have

12

actually misled the employee to his prejudice. (*Id.* at pp. 212-213.)

Appellant identifies several instances in which the SPB's factual findings differed from some of the allegations in the NOAA. He fails, however, to demonstrate any resulting prejudice. For example, the NOAA alleges that YCC King ordered youth Orozco to go to his room. The SPB found that appellant did not hear King order Orozco to his room. In other respects, however, the SPB's findings mirrored the NOAA. The SPB found that appellant ignored King's requests, argued with him, used profanity and made a disparaging remark about King's race in front of youth and staff. This violated multiple department policies. These facts were also alleged in the NOAA. Any variance between the NOAA and the ALJ's decision was immaterial.

We reach the same conclusion with respect to the remaining incidents of discourteous behavior. The only difference between the NOAA and the SPB's decision regarding appellant's use of profanity with the youth Banda was that the SPB concluded appellant's comment was made in jest. Whether joking or not, however, appellant's use of profanity violated department policy, as alleged in the NOAA. For that reason, the incident was a proper basis for discipline.

Similarly, with regard to the incident involving YCC Orr and the card game, the SPB found that appellant spoke to Orr "in an elevated and aggressive tone," rather than "yelling" at him, as alleged in the NOAA. This is not a material difference. The NOAA alleged that appellant refused to comply with Orr's requests, ignored Orr in front of youth and yelled at him in front of youth and other staff. The SPB agreed, finding that, "the

13

charged discourteous treatment goes to Appellant's ignoring Orr and continuing to play cards as Orr repeated his request that they stop."

Finally, the SPB credited the testimony of PA Vigil and found that appellant's explanation of his remarks was "not credible." We do not second guess the SPB's credibility determinations. (*Carrasco, supra,* 70 Cal.App.5th at pp. 135-136; *Telish, supra,* 234 Cal.App.4th at p. 1496.) PA Vigil's testimony was substantial evidence supporting the the SPB's factual findings.

<u>Penalty</u>. An administrative agency is entitled to great deference in its determination of the penalty imposed for employee misconduct. *(Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50 (*Deegan*).) "'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.'" (*Pasos, supra,* 52 Cal.App.5th at p. 700, quoting *Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 404.)

In determining whether the penalty imposed by an administrative agency was an abuse of discretion, "'the overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service. Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.'" (*Cate, supra,* 204 Cal.App.4th at pp. 284-285, quoting *Warren v. State Personnel Board* (1979) 94 Cal.App.3d 95, 107-108.) An abuse of discretion will be shown only in an exceptional case where "'reasonable minds cannot differ on the appropriate penalty.'" *(Pasos, supra,* 52 Cal.App.5th at p. 700.)

14

Appellant contends the SPB abused its discretion when it affirmed his dismissal because none of the incidents alleged in the NOAA lasted longer than a few minutes or disrupted the normal functions of the facility. We are not persuaded.

Peace officers are held to the highest standard of behavior. (*Pasos, supra,* 52 Cal.App.5th at p. 702.) Violating the law by driving under the influence of alcohol harms the public service because it endangers the public and is entirely inconsistent with the Department's goal of rehabilitating troubled youth. (*Deegan, supra,* 72 Cal.App.4th at p. 50; *Ramirez, supra,* 204 Cal.App.3d at pp. 293-294.). The SPB did not abuse its discretion when it found appellant's conduct in driving while under the influence was an inexcusable neglect of duty and a failure of good behavior meriting dismissal. (Gov. Code, § 19572, subds. (d), (t).)

The SPB's additional findings of misconduct provide further support for its order. As the SPB found, appellant harmed the public service by willfully disobeying numerous Department policies and repeatedly behaving toward his coworkers in a discourteous and unprofessional manner. The SPB did not abuse its discretion when it found dismissal was an appropriate penalty for this misconduct.

<u>Public Safety Officers Procedural Bill of Rights Act (POBRA)</u>. Appellant contends the Department violated the POBRA, (Gov. Code, §§ 3300, et seq.), because it did not give him notice of, or an opportunity to respond to complaints made about him by his coworkers before those complaints were used as a basis for the NOAA. (Gov. Code, §§ 3305, 3306.) We disagree.

A peace officer may not be disciplined for "any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public

15

agency's discovery . . . of the allegation of . . . misconduct." (Gov. Code, § 3304, subd. (d)(1).) Additionally, officers have a right "to view any adverse comment placed in their personnel files [(Gov. Code, § 3305)] and to file, within 30 days, a written response, which will be attached to the adverse comment. [(Gov. Code, § 3306.)] These provisions reflect the public's interest in good relations between peace officers and their employers, including protecting peace officers from unfair attacks on their character." (*County of Riverside v. Superior Court* (2002) 27 Cal.4th 793, 799.)

Government Code sections 3305 and 3306 are intended to address "the unfairness in allowing law enforcement agencies to maintain undisclosed allegations in a separate confidential file with potential consequence for future personnel decisionmaking." (*Oakland Police Officers' Assn. v. City of Oakland* (2021) 63 Cal.App.5th 503, 523.) To that end, the statutes mandate that an officer receive access to comments and complaints when the employer investigates and decides not to act on a complaint but places it in the officer's personnel file or a similar record. (*Ibid.*)

The statutes do not apply here. The Department investigated complaints against appellant and decided to impose discipline. Within one year of receiving the complaints, the Department served appellant with the NOAA and with copies of the relevant complaints. This constitutes compliance with the POBRA.

*Conclusion*

The SPB's findings are supported by substantial evidence. Its decision to affirm the penalty of dismissal was not an abuse of discretion. For these reasons, the trial court properly denied

16

appellant's petition for writ of mandate.  The judgment is affirmed. The Department shall recover its costs on appeal.

NOT TO BE PUBLISHED.


                              YEGAN, Acting P. J.

We concur:


        BALTODANO, J.


        CODY, J.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Patrick Barber, in propria persona, for Plaintiff and Appellant.

No appearance for Respondents.

Rob Bonta, Attorney General, Chris A. Knudsen, Snr. Assistant Attorney General, Kenneth C. Jones, Supervising Deputy Attorney General, Kayi Okine, Katharine Tremblay, Deputy Attorneys General, for Real Party in Interest.