[No. B039494. Second Dist., Div. Four. Jan. 18, 1990.]

WILLIAM T. WILLIAMSON, Petitioner and Respondent, v.
BOARD OF MEDICAL QUALITY ASSURANCE, Respondent and
Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, and Margaret A. Lafko, Deputy Attorney General, for Respondent and Appellant.

Andrew J. Haynal for Petitioner and Respondent.

## OPINION

**GOERTZEN, J.**—This is an appeal from a judgment granting a writ of administrative mandamus against appellant Board of Medical Quality Assurance of the State of California (the Board). The proceedings below were instituted by respondent William T. Williamson, M.D. (respondent), who sought an order setting aside a decision of the Board revoking his license as a medical doctor. The judgment ordered the Board "to reconsider the discipline imposed and make findings as to the propriety and applicability of less drastic alternatives of discipline."

### FACTS AND PROCEDURAL HISTORY

The underlying facts are not in dispute. They are succinctly stated in the proposed statement of decision prepared by the administrative law judge and adopted by the Board. The Board's decision is attached to this opinion as an appendix and incorporated herein. In sum, the statement of decision reveals that respondent, a 79-year-old physician, has a history of long-term drug dependency and of prescribing dangerous drugs/controlled substances to others without a good faith prior examination and medical indication. Consequently, the Board revoked his license to practice medicine.

After the Board revoked respondent's license and denied his motion for reconsideration, he petitioned the superior court for a writ of administrative mandamus. (Code Civ. Proc., § 1094.5.) Among other things, respondent asserted that the penalty was drastic and, as such, was a clear abuse of discretion.

The judgment reveals that in the exercise of its independent judgment, the court found the evidence supported the factual findings in the Board's statement of decision. Acknowledging that the discipline which had been imposed was authorized by statute, the court went on to identify the real focus of the petition as being the propriety of the discipline of revocation. In pertinent part, the judgment states: "The difficulty is that neither the board nor the administrative law judge made findings as to penalty by which the court could determine whether there had been an abuse of discretion. . . . Here, neither the board nor the administrative law judge revealed why probation with strict conditions regarding drug use and their prescription, drug testing and treatment, further education, and supervised practice in conjuction [*sic*] with actual suspension until petitioner could be evaluated would not be sufficient to protect the public—all as contemplated in the ascending order of discipline or probation of [Business and Professions Code] §§ 2221 and 2227. Petitioner's long service to his community and to

this nation entitle him to such evaluation consideration and findings thereon."

ISSUES

The issues on appeal are ones of law. First, we are asked to determine whether statutory or case law requires the Board to provide findings as to a penalty imposed. Second, we must consider whether the Board abused its discretion, as a matter of law, when it ordered the revocation of respondent's license.

DISCUSSION

*Penalty Findings.* In pertinent part, Government Code section 11518 provides that after an administrative adjudication, an agency's decision "shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any." ■ Here, the Board's decision contains 19 findings of fact, a determination of the issues for imposing discipline, and the penalty of revocation; therefore, it complies with these statutory requirements. The Board's decision admittedly does not include findings as to the penalty; however, the clear language of the statute does not require them. (*Otash* v. *Bureau of Private Investigators* (1964) 230 Cal.App.2d 568, 575 [41 Cal.Rptr. 263].)

*The Revocation Penalty and Abuse of Discretion.* ■ Because on the erroneous ground that the decision lacked penalty findings the court failed to determine whether the penalty of revocation constituted an abuse of discretion, we do so now.

■ We recognize that under certain circumstances, the determination of whether a penalty is appropriate is a mixed question of law and fact to which the appellate court may defer to the trial court on the basis of the substantial evidence rule. (*Toyota of Visalia, Inc.* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 326 [202 Cal.Rptr. 190].) However, the court here removed any question of fact when it held that in its independent judgment the evidence supported the factual findings of the Board. Therefore, we are left with a question of law: Did the Board abuse its discretion when it revoked respondent's license?

Section 1094.5, subdivision (b) of the Code of Civil Procedure defines abuse of discretion in review of an administrative decision as follows: "Abuse of discretion is established if [the Board] has not proceeded in the manner required by law, the order or decision is not supported by the

findings, or the findings are not supported by the evidence." The judgment and the transcript of the hearing on the petition indicate that the court rejected the first and third factors listed in this statute. It found that the evidence supported the Board's factual findings.

The inquiry focuses on whether the revocation penalty is supported by the Board's findings. ■ "The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency, and its decision may not be disturbed unless there has been a manifest abuse of discretion. [Citations.]" (*Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224, 228 [120 Cal.Rptr. 452].) In the instant case, if the decision of revocation was not supported by the findings, then the Board's decision would constitute an abuse of discretion.

" '[I]n reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; *nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.* [Citation.] Such interference, . . . will only be sanctioned when there is an arbitrary, capricious or patently abusive exercise of discretion.' [Citation.]" (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966 [103 Cal.Rptr. 455], italics added.)

■ Here, the Board's decision of revocation followed findings of seven individual instances of illegally prescribing drugs and three incidents of falsifying medical records to cover up the illegal prescribing—all occurring between November 1986 and August 1987. The Board was also confronted with evidence of respondent's personal abuse of drugs.

In addition, the Board was aware that this was not appellant's first instance of discipline. By an order effective May 12, 1966, the Board previously had revoked respondent's medical license, stayed this revocation and placed respondent on probation for 10 years without narcotics, and had ordered respondent to surrender his federal narcotics permit. In October 1979, the Board began investigating a complaint by former employees of respondent, who suspected that he was abusing Talwin.[1] Respondent was interviewed by an investigator for the Board concerning this allegation, and he agreed to enter the Board's diversion program in late 1981. On or about

---

[1] Talwin is classified as a schedule IV controlled substance pursuant to Federal Uniform Controlled Substances Act.

May 1983, respondent was unsuccessfully terminated from the diversion program for noncompliance with his treatment contract.

Although not required to do so, the Board also entered three findings in mitigation. (*Vienna* v. *California Horse Racing Bd.* (1982) 133 Cal.App.3d 387, 400 [184 Cal.Rptr. 64].) The Board considered this evidence as well as respondent's prior history before imposing revocation. When it ordered revocation, the Board concluded: "Respondent's evidence has been carefully weighed, but it is determined that there are too many unanswered questions concerning his present circumstances. Consequently, his present competence to practice medicine safely cannot be determined. The public interest requires revocation of his certificate."

Given this factual foundation, we cannot say that, as a matter of law, the Board abused its discretion when it ordered the revocation of respondent's license. Even truer today are the words of Justice Dunn written 18 years ago: "In view of the rampant drug abuse problems existing today we cannot say as a matter of law that a board, composed chiefly of licensed doctors who presumably have some professional expertise in the matter, abused its discretion in revoking [the doctor/respondent's] license." (*Collins* v. *Board of Medical Examiners* (1972) 29 Cal.App.3d 439, 446 [105 Cal.Rptr. 634].)

### DISPOSITION

As the court erred in ordering the Board to reconsider the discipline imposed and to make penalty findings, the judgment is reversed. Instead, a new and different judgment is to be entered denying respondent's petition for writ of mandate. Each party to bear its own costs.

Woods (A. M.), P. J., and McClosky, J., concurred.

The petition of respondent Williamson for review by the Supreme Court was denied April 18, 1990.

APPENDIX

BEFORE THE DIVISION OF MEDICAL QUALITY

BOARD OF MEDICAL QUALITY ASSURANCE

DEPARTMENT OF CONSUMER AFFAIRS

STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Accusation Against:<br><br>WILLIAM T. WILLIAMSON, M.D.<br>720 Brookside Avenue, Suite 104<br>Redlands, California 92373<br><br>Physician's and Surgeon's<br>Certificate No. A 08964<br><br>           Respondent. | NO. D-3686<br><br>L-41280 |

## DECISION

The attached Proposed Decision of the Administrative Law Judge is hereby adopted by the Board of Medical Quality Assurance as its decision in the above-entitled matter.

This Decision shall become effective  January 7, 1988  .

IT IS SO ORDERED  December 8, 1987  .

BOARD OF MEDICAL QUALITY ASSURANCE
BOARD OF MEDICAL QUALITY ASSURANCE
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA

By _____
JOHN W. SIMMONS
Secretary-Treasurer
Division of Medical Quality

mh

Exhibit 1                    **10**

BEFORE THE DIVISION OF MEDICAL QUALITY

BOARD OF MEDICAL QUALITY ASSURANCE

DEPARTMENT OF CONSUMER AFFAIRS

STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Accusation Against: | ) ) ) NO. D-3686 |
| WILLIAM T. WILLIAMSON, M.D. 720 Brookside Avenue, Suite 104 Redlands, California 92373 | ) ) L-41280 ) ) |
| Physician's and Surgeon's Certificate No. A 08964 | ) ) ) |
| Respondent. | ) ) ) |

## PROPOSED DECISION

This matter came on regularly to be heard before Paul. M. Hogan, Administrative Law Judge of the Office of Administrative Hearings, at San Bernardino, California on November 2, 1987, and continued from day to day thereafter until concluded on November 13, 1987.

Complainant was represented by Margarat A. Lafko, Deputy Attorney General. William T. Williamson, M.D., ("respondent") appeared personally and was represented by Gary S. Redinger, attorney at law, 505 North Arrowhead Avenue, San Bernardino, California 92401

Evidence, both oral and documentary was presented and the matter was submitted for decision. The Administrative Law Judge finds the following facts:

## MATTERS ADMITTED

Respondent has admitted the truth of the matters described in Findings I through III below:

I

Kenneth J. Wagstaff is the Executive Officer of the Board of Medical Quality Assurance (hereinafter the "Board") and filed the Accusation solely in his official capacity as such.

**11**

-1-

II

## License Status

At all times mentioned herein, William T. Williamson, M.D. (respondent), held physician's and surgeon's license No. A 08964 issued to him by the Board on September 9, 1940.

III

At all times relevant herein, respondent has maintained a medical office located at 720 Brookside Avenue, Suite 104, Redlands, California, (hereinafter respondent's office").

IV

## Temporary Restraining Order/Preliminary Injunction

On August 27, 1987, the San Bernardino Superior Court issued a Temporary Restraining Order (hereinafter "TRO") against respondent's right to practice medicine and against his right to prescribe, dispense, furnish, order or possess controlled substances or dangerous drugs.

V

On September 2, 1987, this Temporary Restraining Order was continued by the Court by the issuance of a Preliminary Injunction which modified the TRO to allow the respondent to possess, for personal use, those controlled substances or dangerous drugs prescribed by his personal physician.

VI

## Prior Discipline

By an order effective May 12, 1966, the Board revoked respondent's license, with said revocation stayed, probation for 10 years without narcotics, and respondent was ordered to surrender his federal narcotic permit.

VII

## Prior Diversion Referras as an Impaired Physician

In October, 1979, the Board began investigating a complaint by former employees of respondent. The employees suspected that respondent was abusing Talwin. Respondent

12

was interviewed by an investigator and respondent agreed to enter the Board's diversion program in late 1981. On or about May, 1983, respondent's participation in the Diversion program terminated.

## VIII

### MATTERS OFFICIALLY NOTED

#### Drugs

At all times relevant herein the following drugs have been, and currently are, dangerous drugs within the meaning of Business and Professions Code section 4211, and, at all times relevant herein, classified as controlled substances as follows:

A. Butisol is classified as a Schedule III controlled substances pursuant to the Federal Uniform Controlled Substances Act. (§§ 1308.11 -1308.15, Title 21 Code of Federal Regulations; Title II, P.L. 91-513) and the California Uniformed Controlled Substances Act (§§ 11053-11058 California Health and Safety Code.)[1]

B. Doriden is classified as a Schedule II controlled substance pursuant to the Federal Uniform controlled substances Act.

C. Fastin is a Schedule IV controlled substance pursuant to the Federal Uniform Controlled Substances Act.

---

[1]Effective January 1, 1985, Schedules I through V of the California Uniform Controlled Substances Act were revised so as to generally parallel the five schedules contained in the Federal Controlled substances Act (Ch. 1635, Stats. 1984). All drugs listed hereinabove in paragraph 8 are now classified under the California Controlled Substances Act in accordance with the Federal Controlled Substances Act. Prior to January 1, 1985, California Health and Safety Code section 11150.5 provided that the provisions of Chapter 4 of Division 10 of the Health and Safety Code commencing with section 11053 are applicable to controlled substances in a particular schedule were deemed references to the federal schedules. Section 11150.5 was repealed effective January 1, 1985, as a part of the bill which revised the California Uniform Controlled Substances Act to parallel the Federal Uniform Controlled Substances Act. (Ch. 1635, Stats. 1984.)

D. Talwin is classified as a Schedule IV controlled substance pursuant to Federal Uniform Controlled Substances Act.

E. Tylenol #4 (with Codeine) is classified as Schedule III controlled substances pursuant to the Federal Uniform Controlled Substances Act.

IX

## FINDINGS OF THE MERITS

### Prescribing Dangerous Drugs/Controlled Substances

A. Rachelle McCullough aka "Sally Garcia"

On or about November 6, 1986, at respondent's office, respondent furnished Rachelle McCullough, (hereinafter "McCullough") known to respondent as "Sally Garcia", a prescription for thirty (30) Doriden, 0.5 grams, and thirty (30) Tylenol with Codeine, dangerous drugs within the meaning of Business and Professions Code section 4211. Respondent provided the drugs without a good faith prior examination and medical indication.

On January 8, 1987, at respondent't office respondent furnished Rachelle McCullough, known to respondent as "Sally Garcia," a prescription for one hundred (100) Doriden, 0.5 gr., and thirty (30) Tylenol with Codeine, dangerous drugs within the meaning of Business and Professions Code section 4211. Respondent provided said drugs without a good faith prior examination and medical indication.

B. Cynthia Brandenburg aka "Cindy Weaver aka Cindy Harper"

On or about December 8, 1986, at respondent's office, respondent furnished Board of Medical Quality Assurance (Complainant) Investigator Cynthia Brandenburg (hereinafter "Brandenburg"), known to respondent as "Cindy Harper" and Cindy Weaver", a prescription for thirty (30) Doriden, O.5 gr., and twenty-four (24) Tylenol with Codeine, dangerous drugs within the meaning of Business and Professions Code section 4211. Respondent provided said drugs without a good faith prior examination and medical indication.

On or about January 15, 1987, at respondent's office, respondent furnished Brandenburg, known to respondent as "Cindy Harper" and Cindy Weaver", a prescription for

thirty (30) Doriden, 0.5 gr., and twenty-four (24) Tylenol with Codeine, dangerous drugs within the meaning of Business and Professions Code section 4211. Respondent provided said drugs without a good faith prior examination and medical indication.

C. Linda Davis aka "Jan Michael"

On or about March 2, 1987, at respondent's office, respondent furnished Linda Davis (hereinafter "Davis"), known to respondent as "Jan Michael", forty (40) Butisol, 30 mg., a dangerous drug within the meaning of Business and Professions Code section 4211. Respondent provided said drugs without a good faith prior examination and medical indication.

D. Judith Kellerman aka "Judy Wilson"

On or about July 23, 1987, at respondent's office, respondent furnished Judith Kellerman (hereinafter "Kellerman"), known to respondent as "Judy Wilson", a bottle of thirty (30) Fastin, a dangerous drug within the meaning of Business and Professions Code section 4211. Respondent provided said drug without a good faith prior examination and medical indication.

On or about August 12, 1987, at respondent's office, respondent furnished Judith Kellerman, known to respondent as "Judy Wilson", a bottle of thirty (30) Fastin, a dangerous drug within the meaning of Business and Professions Code section 4211. Respondent provided said drug without a good faith prior examination and medical indication.

X

Falsification of Medical Records

A. On January 7, 1987, respondent wrote in his medical record for Rachelle McCullough a statement that indicates she "has tension headaches" when, in fact, McCullough never complained of headaches.

B. On December 9, 1986, respondent wrote in his medical record for Cynthia Brndenburgh aka Cindy Weaver aka Cindy Harper that she was "subject to tension headaches on occasion" when, in fact, she never complained of such headaches. On January 15, 1987, respondent recorded that she was taking Tylenol with Codeine on occasion for "severe muscular pain or headache" when, in fact, she never complained of muscular pain or headache.

-5-

15

C. On March 2, 1987, respondent wrote in his medical record for Linda Davis aka Jan Michael that she was under "undue strain" when, in fact, she never complained of undue strain.·

### PROCUREMENT OF DRUGS FOR SELF-ADMINISTRATION

#### XI

In May of 1983, respondent met Arthur and Noriko Hufford. Mr. Hufford was a retired merchant seaman. He had served for years as a chief steward. At the time respondent met him, Mr. Hufford had sustained financial reverses and was suffering from severe low back pain. Respondent became Mr. Hufford's physician.

#### XII

The Huffords moved their motor home on respondent's property and were allowed to live there and in a guest house from May 1986 to August 1987. Rent was waived by the Williamsons because the Huffords were furnishing them protection.

#### XIII

From March 1984 through May 1987 respondent issued prescriptions for Arthur Hufford for Talwin, and Noriko Hufford went to various pharmacies in several communities to fill them. The Talwin thus obtained was used to relieve Mr. Hufford, Doctor Williamson, and Mrs. Williamson of chronic severe pain. During this period Mr. Hufford was suffering from lumbar pain, respondent had successive bowel obstructions, and Mrs. Williamson had sustained severe acid burns.

#### XIV

During this period, respondent did inject himself with Talwin from time to time to an extent which is unclear.

#### XV

It was not established why the Williamson's did not seek pain relief from their own treating physicians.

#### XVI

It is not clear why respondent used his patient and his patient's wife to obtain drugs which could readily be obtained through normal channels.

**16**

## MITIGATION

### XVII

This seventy-nine year old physician has practiced for forty-seven years with no disciplinary action other than as noted above. Only one civil action has been filed against him -- a malpractice action initiated by the Huffords. Several local physicians and surgeons think well of his professional competence. He has a loyal patient following.

### XVIII

Respondent has had substantial personal family problems. He has two young children dependent on him for support. His fifth marriage has lasted about twenty years, but now his wife is estranged. He is suffering financial hardship.

### XIX

Respondent's demeanor was courteous and coopera-tive. He seems to be alert, coherent and intelligent. While not admitting misconduct, respondent attributes deficiencies in patient care, if any, to pain and stress he was undergoing at the time.

### DETERMINATION OF ISSUES

1. Respondent's evidence has been carefully weighed, but it is determined that there are too many unanswered questions concerning his present circumstances. Consequently, his present competence to practice medicine safely can not be determined. The public interest requires revocation of his certificate.

2. Cause exists for discipline of respondent's physician's and surgeon's certificate pursuant to sections 2004, 2227, and 2234 of the Business and Professions Code as follows:

a. For respondent's violations of the laws set forth below by reason of the acts and omissions described in Finding IX:

Excessive prescribing of drugs within the meaning of Business and Professions Code section 725; the providing of dangerous drugs without a good faith examination and medical indication therefor in violation of Business and Professions Code section 2242;.

-7-

17

prescribing of a controlled substance for
other than a legitimate medical purpose in
violation of Health and Safety Code section
11153; prescribing for some not under treatment
for a pathology or condition, in violation of
Health and Safety Code section 11154; and
issuing a false or fictitious prescription, in
violation of Health and Safety Code section
11157. The violation of Business and Professions
Code sections 725, 2242, and Health and Safety
Code sections 11153, 11154, and 11157, constitutes the violation of statutes of the State of
California regulating dangerous drugs or
controlled substances and as such violates
Business and Professions Code section 2238.

b. For respondent's violation of Business and
Professions Code sections 2262 and 2234(e) by reason of the
facts described in Finding X.

c. For respondent's violation of Business and
Professions Code section 2239(a) by reason of the facts set
forth in Findings XI through XVI.

## ORDER

Physician's and surgeon's license number A-08964
heretofore issued to William T. Williamson, M.D. is hereby
revoked.

DATED 11/23/87

PAUL M. HOGAN
Administrative Law Judge
Office of Administrative Hearings

PMH:mh

-8-

**18**