[No. F060098. Fifth Dist. Aug. 24, 2011.]

FARSHAD A. TAFTI, Plaintiff and Appellant, v.
COUNTY OF TULARE et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

892

---

**COUNSEL**

Farshad A. Tafti, in pro. per.; and Mickey Jew for Plaintiff and Appellant.

Kathleen Bales-Lange, County Counsel, and Julia C. Langley, Deputy County Counsel, for Defendants and Respondents.

## OPINION

KANE, J.—Farshad A. Tafti (appellant), an individual doing business as Kaweah General Store, appeals from a judgment denying his petition for a writ of mandate in which he challenged the validity of $1,148,200 in civil penalties imposed against him by the County of Tulare and Tulare County division of environmental health services (collectively referred to as respondent). The civil penalties were imposed following an administrative hearing before an administrative law judge (ALJ), whose findings were adopted by respondent, and were based on alleged violations by appellant of laws relating to underground gasoline storage tanks. Prior to the hearing, respondent had issued an enforcement order determining that appellant committed certain violations and owed civil penalties of $138,824. Appellant requested an appeal hearing after being notified by respondent that such a hearing would be an opportunity to challenge the enforcement order. When the hearing resulted in a massive increase of over $1 million in the total amount of civil penalties, appellant appealed. His appeal raises issues of notice, fairness, due process and statutory authority, among others. We conclude that under the unique circumstances shown in this case, appellant did not receive fair and adequate notice. Accordingly, we reverse the judgment of the trial court with instructions to grant the writ of mandate to the extent explained in our disposition below.

## FACTS AND PROCEDURAL HISTORY

Appellant is the owner of the Kaweah General Store in Three Rivers, California, which had included a small gasoline station. When appellant purchased the property in 2000, it consisted of an 800-square-foot building, three gasoline dispensers, and underground gasoline storage tanks. From approximately December of 2003 through September of 2006, respondent notified appellant of noncompliance with laws relating to underground storage tanks and sought to have appellant take steps to correct the specified violations.

Respondent is a local enforcement agency (also referred to as a unified program agency) that is certified under state law to implement the "Unified Hazardous Waste and Hazardous Materials Management Regulatory Program" (see Health & Saf. Code,[1] §§ 25404–25404.9) in Tulare County. Respondent's enforcement responsibility includes laws regulating underground storage tanks. (See § 25404.1.1, subd. (a); cf. § 25299, subds. (a) & (b).)

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

On September 5, 2006, respondent issued an administrative enforcement order (the Enforcement Order) against appellant, assessing a penalty of $138,824. The Enforcement Order alleged several violations of administrative regulations that are codified at California Code of Regulations, title 23, division 3, chapter 16 (hereafter Regulations), which regulate underground storage tanks. The Enforcement Order notified appellant that respondent had "determined" that appellant committed the violations detailed in the Enforcement Order. According to the Enforcement Order, appellant violated Regulations, title 23, section 2670, subdivision (e) by the following conduct: (1) failure to follow applicable containment and monitoring requirements during the period of time between cessation of hazardous substance storage and actual completion of tank closure (with the period of violation from Sept. 30, 2004, until at least May 31, 2006, or 609 days); (2) failure to apply for temporary or permanent tank closure within the required time period (with the period of violation from Dec. 29, 2004, until at least May 31, 2006, or 519 days); and (3) failure to complete tank closure within a reasonable time period (with the period of violation from Nov. 3, 2004, until at least May 31, 2006, or 575 days). Further, the Enforcement Order cited appellant for violation of Regulations, title 23, section 2671, subdivision (a)(1) for failure to remove and handle all residual liquid, solids, or sludge from the underground storage tanks in accordance with the applicable provisions of chapters 6.5 and 6.7 of division 20 of the Health and Safety Code (with the period of violation from Nov. 3, 2004, until at least May 31, 2006, or 575 days). Finally, the Enforcement Order alleged that appellant violated Regulations, title 23, section 2671, subdivision (a)(2) by his failure to "inert" the underground gasoline storage tanks to safe levels that would preclude an explosion (with the period of violation from Nov. 3, 2004, until at least May 31, 2006, or 575 days).

Based on these determinations, the Enforcement Order ordered appellant to "remove the two 6,000-gallon [underground gasoline storage tanks] in accordance with Article 7 of Title 23, California Code of Regulations, Chapter 16." Appellant was also ordered to pay the sum of $138,824, of which $137,778 was a "penalty" for the violations noted in the Enforcement Order and $1,046 was for administrative costs.[2]

In paragraph 6 of the Enforcement Order, under the heading "RIGHT TO A HEARING," it stated: "[Appellant] may request a hearing *to challenge the Order.* Appeal procedures are described in the attached Statement . . . ." (Italics added.) The attached statement advised appellant that he "may choose: [¶] [1] to comply with the Order immediately, [¶] [2] to discuss the matter with [respondent] at the Informal Conference scheduled below, or [¶] [3] to pursue a formal appeal." Under the heading "FORMAL APPEAL RIGHTS," it was explained

---

[2] For convenience, we refer to the entire sum of $138,824 as civil penalties.

that appellant may request a "hearing" by mailing or delivering a "Notice of Defense" within time limits indicated, otherwise the Enforcement Order would become final. The statement further explained: "If you file a Notice of Defense within the time permitted, a hearing on the allegations made in the Order will be conducted by the Office of Administrative Hearings of the Agency of General Services in accordance with the procedures specified in Health and Safety Code section 25404.1.1 and Government Code section 11507 et seq."

Appellant removed the underground gasoline storage tanks and gasoline dispensers. On October 26, 2006, the soil under the site of the underground storage tanks and dispensers was tested and found not to have any contamination under United States Environmental Protection Agency standards.

Appellant timely filed a notice of defense requesting a hearing to challenge the Enforcement Order. On March 20, 2007, an administrative hearing commenced before ALJ Robert Walker (the ALJ) and was continued to May 14, 2007. Ultimately, the hearing was completed on January 29, 2008. The administrative hearing was bifurcated to separate issues of violation from those of penalty. After the portion of the hearing addressing the substantive violations, the ALJ made factual findings that appellant violated Regulations, title 23, sections 2670, subdivision (e), and 2671, subdivision (a)(1) and (2). Following the subsequent hearing addressing the civil penalties, the ALJ listed each of the violations, made findings of the number of days that the violations continued, and applied a per-day penalty amount as to each category of violation after considering the factors listed in sections 25299 and 25404.1.1. When the math was done, the ALJ determined that appellant owed a total civil penalty of $1,148,200. The ALJ's proposed decision was thereafter adopted by respondent as its decision and order, thereby imposing penalties against appellant of $1,148,200.

Appellant petitioned to Tulare County Superior Court for a writ of mandate seeking to overturn respondent's decision and order. The court reviewed the record as well as the proposed findings of fact submitted by appellant and respondent. It adopted findings 1 through 61 as submitted by respondent, concluded that appellant received adequate notice and due process of law, and it held that the findings of fact made by the ALJ and adopted by respondent were supported by substantial evidence. The court rejected appellant's contention that the civil penalties violated the excessive fines clause of the United States Constitution, since the importance of the interests protected and the potential for harm supported the imposition of the penalty. Thus, according to the court's findings, the civil penalty was not disproportionate to the offense. The court therefore affirmed the penalties and it denied the petition for writ of mandate in its entirety.

Appellant's timely appeal followed. He contends the trial court erred on the following grounds: (1) the ALJ and respondent lacked authority to impose civil penalties for violations of *regulations*; (2) the ALJ and respondent lacked authority to impose penalties greater than the amount imposed by the Enforcement Order; (3) appellant was not provided adequate notice and opportunity to be heard; (4) the penalties imposed were excessive and violated appellant's constitutional rights; and (5) the ALJ abused his discretion in failing to consider evidence of appellant's financial ability to pay the imposed penalties.

## DISCUSSION

### I. *Standard of Review*

In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. That limitation, however, does not apply to resolution of questions of law where the facts are undisputed. In such cases, as in other instances involving matters of law, the appellate court is not bound by the trial court's decision, but may make its own determination. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502 [2 Cal.Rptr.2d 50].) Additionally, a question of statutory construction is a legal issue that is reviewed de novo. (*Department of Corrections & Rehabilitation v. California State Personnel Bd.* (2007) 147 Cal.App.4th 797, 802 [54 Cal.Rptr.3d 665].) We also independently review appellant's claims that he did not receive adequate notice or due process. (*Margarito v. State Athletic Com.* (2010) 189 Cal.App.4th 159, 166 [116 Cal.Rptr.3d 888]; *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169–1170 [56 Cal.Rptr.2d 223].)

### II., III.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Adequacy of Notice*

In essence, appellant contends that he did not receive fair or adequate notice of the following: (1) the nature of the administrative hearing on the question of the amount of civil penalties that could be decided therein. (i.e., whether the hearing would merely test the merits of the Enforcement Order or decide anew the amount of appropriate penalties such that the posthearing penalties could greatly exceed the amount determined in the Enforcement

---

[*]See footnote, *ante*, page 891.

Order) *and* (2) the statutory basis for the civil penalties that would be at stake. For the reasons expressed below, we agree with appellant's first contention.

## A. *Inadequate Notice of Nature and Scope of Hearing*

The Enforcement Order issued by respondent pursuant to section 25404.1.1 was explicitly a "[d]etermination" made by respondent, as the unified program agency, that appellant had committed certain violations relating to underground gasoline storage tanks and, based on respondent's determination of said violations, that appellant must pay a monetary penalty of $138,824. Unless a hearing was requested, the order would become final and effective within 20 days. However, the Enforcement Order added: "[Appellant] may request a hearing to challenge the Order. Appeal procedures are described in the attached Statement to [appellant]."

Before addressing respondent's description of the appeal or hearing in its written statement provided to appellant, we first make a few preliminary observations to provide a helpful backdrop to our analysis of the notice issue. The first such observation is simply this: An administrative appeal or hearing to review an agency's order imposing civil penalties might logically be handled in more than one way. We can readily think of two ways to go about it, but they are quite different in terms of what is at stake in the hearing. One approach would be that the evidentiary hearing would provide an opportunity for the accused party to challenge the factual basis or *the merits* of the violations and penalties set forth in the order. If the violations are found to exist, the amount of the civil penalties previously determined by the agency would presumably be affirmed, unless evidence of statutory factors relevant to imposition of civil penalties persuaded an ALJ that a lesser penalty was appropriate. Under this approach, the amount of civil penalties might be reduced by an ALJ, but they would not be increased. A second approach to such an appeal hearing would be that an ALJ would determine everything anew, including the amount of civil penalties. Under this second approach, which was the one used by the ALJ in the instant case, if the violations are found, an ALJ could then make *an entirely new determination of the amount of civil penalties* under all the circumstances and evidence presented at the hearing, including the imposition of substantially greater civil penalties than were determined by the agency in its enforcement order. Although either of these two alternative approaches would be reasonable, section 25404.1.1 unfortunately gives no indication of how an ALJ (or hearing officer) is to review the issue or what the parties should expect at the hearing.[6]

---

[6] In other contexts in which an administrative hearing is provided to contest a civil penalty imposed by an agency, the applicable statutory provisions have defined the scope of what an ALJ may decide, limiting the result in a manner analogous to the first approach we noted

Secondly, we observe that the particular approach utilized at the hearing matters a great deal in terms of the potential financial detriment or penalty that would be at stake for the purported violator of the underground storage tank laws if a hearing is requested. The amount of a civil penalty is a discretionary determination of the enforcement agency (see *Williamson v. Board of Medical Quality Assurance* (1990) 217 Cal.App.3d 1343, 1347 [266 Cal.Rptr. 520]; *Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967 [103 Cal.Rptr. 455]), and in the instant case it could have ranged from $500 to $5,000 per day, per violation, depending on the agency's evaluation of the relevant statutory factors (§§ 25299, subds. (a) & (g), 25404.1.1, subd. (b)). Here, the Enforcement Order included several discrete violations, each allegedly continuing over a period of at least 519 days to 609 days per violation. If requesting a hearing meant that appellant would have the opportunity to challenge the factual basis for the $138,824 in civil penalties, that is one thing; if it meant potentially risking a drastically greater civil penalty of $1,148,200 or more, that is altogether another.

We now take a closer look at the adequacy of notice in this case. The Enforcement Order provided that it would become final within 20 days unless appellant requested a hearing *"to challenge the Order."* (Italics added.) That wording, by itself, would lead one to expect that the hearing, if requested, would merely test or "challenge" the factual merits of respondent's assertion in the Enforcement Order that certain violations occurred for which appellant is required to pay the sum of $138,824. Further, at the time respondent served the Enforcement Order, it included a separate written statement to appellant describing his "FORMAL APPEAL RIGHTS." The written statement said that if a "Notice of Defense" was filed within the time permitted, "a hearing on the allegations made in the Order will be conducted . . . ." This wording strongly suggested that the hearing, if requested, would be limited to or framed by "the allegations" made in the Enforcement Order, much as a pleading would operate in a civil case to limit the issues. Indeed, the written statement added that the filing of a "Notice of Defense" constituted "a specific denial of all parts of the Order," which pleading terminology (i.e., specific denial) further confirmed that the hearing was for the purpose of addressing the merits of the particular claims set forth in the Enforcement Order.

---

above. (See, e.g., § 1428, subd. (c) [an ALJ "may affirm, modify, or dismiss the citation or the proposed assessment of a civil penalty"]; Bus. & Prof. Code, § 7099.5 [the hearing officer may "issue a decision, based on findings of fact, affirming, modifying, or vacating the citation or penalty, or directing other appropriate relief"].) The second approach is more like a de novo hearing of all issues (such as when a party appeals from a small claims decision per Code Civ. Proc., § 116.770). Of course, here there had not been a prior hearing, but only an agency "determination" of civil penalties.

No other language in the written statement or in the Enforcement Order provided to appellant counteracted the above descriptions of what the hearing would entail. Nothing alerted appellant to the fact that if he requested a hearing, it would reopen the civil penalty issue and allow the ALJ to determine anew, without any limitation to the amount set forth in the Enforcement Order, the total assessment of civil penalties, thereby exposing appellant to a potential of vastly expanded monetary liability.

We note further that respondent's written statement describing the applicable appeal procedures made specific reference to a number of provisions of the formal hearing process of the Administrative Procedure Act (APA; Gov. Code, § 11400 et seq.) set forth in chapter 5 of part 1 of division 3 of the Government Code (commencing with Gov. Code, § 11500). For example, the written statement reflected that a "Notice of Defense" would be treated under the provisions of Government Code section 11506; the discovery rules of Government Code sections 11507.5 through 11507.7 would apply; and in other respects, the hearing would be conducted "in accordance with the procedures specified in Health and Safety Code section 25404.1.1 and Government Code section 11507 et seq." These statements appear to assume the applicability of chapter 5 or at least certain provisions thereof.[7] They were presumably communicated to appellant in an effort to comply with Government Code section 11425.10, subdivision (a)(2), which requires the agency to "make available to the person to which the agency action is directed a copy of the governing procedure, *including a statement whether Chapter 5 (commencing with Section 11500) is applicable to the proceeding.*" (Italics added.) As pointed out by appellant, Government Code section 11506, subdivision (c), states that if a notice of defense is filed, that party is "entitled to a hearing *on the merits.*" Government Code section 11507 adds that the agency may file "an amended or supplemental accusation."[8] We believe the references in the written statement to these provisions of chapter 5 of the

[7] As we discussed previously above, respondent is not legally required to comply with the formal hearing requirements of chapter 5 of the APA unless a statute or regulation so provides. We have found no such statute or regulation in this case. Section 11425.10, subdivision (b) of the Government Code would allow respondent to adopt rules that are more protective of the rights of the person to which its action is directed (such as the provisions of ch. 5 of the APA), yet there is no mention in the record that respondent had formally done so. Nevertheless, respondent's written statement to appellant suggested the provisions of chapter 5 were applicable. Although respondent now denies the applicability of such provisions, arguably the principles of equitable estoppel would preclude such a denial. In any event, our point here is *not* that these provisions were legally applicable, but that in the unique context of this case respondent's statements to appellant indicating these provisions of chapter 5 of the APA were applicable had an impact on the adequacy of notice.

[8] Sections 11506 and 11507 of the Government Code both refer to the "accusation" (here presumably the Enforcement Order). Government Code section 11503, which was not mentioned by respondent in the written statement, states that an accusation must *"specify the statutes and rules which the [appellant] is alleged to have violated."* (Italics added.)

APA would, in light of the other descriptions of the nature of the hearing, tend to reinforce the misleading notion that the hearing, if requested, would be limited to the merits of the factual issues set forth in the Enforcement Order, and that if the agency wanted to seek to impose a significantly greater liability or assert a new factual claim, it would so amend the order.[9]

■ For all of these reasons, we hold that respondent failed to provide adequate notice to appellant concerning the nature of the administrative hearing involved. In particular, it was unclear whether the hearing would simply be an opportunity to challenge the factual basis—i.e., the merits—of the allegations in the Enforcement Order; or conversely, whether the hearing would decide anew the full amount of the appropriate civil penalties, thereby subjecting appellant to the potential of increased civil penalties above and beyond what was determined in the Enforcement Order.[10] We think that basic fairness requires that when a party is ordered by an agency to pay substantial civil penalties, but is given a right to request an administrative hearing concerning said order, the party should be informed of which type of hearing is contemplated so that he or she will be able to ascertain what is at stake and intelligently decide on whether or not to request the hearing. That is particularly the case where, as here, the statute authorizing the civil penalties sets forth an expansive range of financial penalties that might be imposed per violation, per day.[11]

---

[9] We are not suggesting that chapter 5 of the APA is incompatible with taking a de novo approach to the hearing on the issue of the amount of civil penalties. We are only saying that if that approach is going to be used by the agency, it must be clearly specified (especially where the statute authorizing civil penalties has a wide range of penalties that might be applied), so that the party who is deciding on whether or not to request a hearing is informed of the scope of what the hearing will address and what will be at stake. Apart from such a clarification, the wording of the sections of chapter 5 (including Gov. Code, §§ 11506, 11507) would, at least in the circumstances of the present case, tend to confirm that the scope of the appeal regarding civil penalties would be limited to what was alleged or determined in the Enforcement Order.

[10] By the time the hearing commenced, appellant had come to learn that the ALJ could potentially impose penalties of over $1 million. That realization came too late and did not undo the prior lack of notice, since at that point in time the process was set in motion and the hearing was underway. Appellant should have been adequately informed of the scope of the appeal hearing—i.e., the type of hearing contemplated—at or before the time he had to make his election of whether or not to request such a hearing. Therefore, we reject respondent's argument that appellant's participation in the hearing (in which he contested all material aspects of the Enforcement Order) cured the particular notice defect that occurred in this case.

[11] Given the complexity of the statutory and regulatory provisions involved, it would further the due process rights of respective parties and the interest of justice in such administrative actions if the Legislature would either clearly limit the penalty exposure from such administrative appeals to the amount claimed in an underlying enforcement order or, alternatively, explicitly apprise parties of the fact that their decision to appeal could subject them to the risk of a much higher penalty determination.

## B. *Adequate Notice of the Statutory Basis for Civil Penalties*

Appellant also contends that the Enforcement Order failed to expressly inform him of the specific statutory basis for the imposition of the civil penalties (§ 25299) against him. Appellant argues that this failure constituted an additional ground for concluding that he did not receive adequate notice. We disagree. Appellant was notified in the Enforcement Order that respondent's determination was based on section 25404.1.1, and subdivision (a)(2) of section 25404.1.1 clearly refers to section 25299. Although it is true that section 25404.1.1 authorizes imposition of civil penalties based on a number of *other* statutory provisions, there could be no doubt in this case that the applicable section was 25299, which related to violations of laws regarding underground storage tanks—the very substance of the charges against appellant in the Enforcement Order. He was also informed of the applicability of section 25299 in some of the prior warning letters sent to him. Therefore, under the circumstances of this case, appellant was adequately apprised of the statutory basis for the civil penalties.

Although we do not agree with the conclusion argued by appellant on this particular issue, we agree that the better practice would have been for respondent to clearly and explicitly articulate in the Enforcement Order that the basis for the civil penalties was *subdivision (a)(2)* of section 25404.1.1, which references section 25299, and/or to directly state that the underlying statutory basis for the civil penalties was section 25299.

## C. *Conclusion*

■ It is appropriate for this court to vacate administrative penalties where there has not been fair and adequate notice. (See *Smith v. State Bd. of Pharmacy* (1995) 37 Cal.App.4th 229, 245 [43 Cal.Rptr.2d 532].) ■ We hold that appellant did not receive fair and adequate notice in the present case because he was misled about the nature of the appeal hearing. He was told, in essence, that if he requested a hearing it would merely allow him to challenge the merits of the allegations of the Enforcement Order. In reality, the hearing would reopen the issue of the extent of civil penalties, subjecting appellant to liability for monetary penalties greatly exceeding what was determined in the Enforcement Order. As a result of the inadequate notice, we conclude that the portion of the civil penalties imposed by respondent above the amount it previously determined in the Enforcement Order must be vacated. Moreover, the error is prejudicial and not correctible by a mere remand to respondent for a new determination because the error prevented appellant from being able to make an informed decision on whether to request a hearing in the first place. Since the portion of the civil penalties that were in violation of due process were those exceeding the originally determined sum of $138,824, they are

readily *severable* from the remainder of the penalties. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1383, 1404 [241 Cal.Rptr. 67, 743 P.2d 1323] [improper punitive damages severed from amount awarded by commission].) The remaining civil penalties ($138,824) were not affected by the notice defect and are accordingly affirmed.

In light of our disposition based on the notice issue, it is not necessary to decide appellant's additional arguments that the civil penalties ultimately imposed against him were excessive or unconstitutional or that they were improperly imposed without sufficient consideration of his ability to pay.

## DISPOSITION

The judgment of the trial court is reversed, with directions that the court issue a writ of mandate commanding respondent to vacate and set aside that part of its decision imposing civil penalties exceeding the amount it originally determined of $138,824, but to affirm the civil penalties of $138,824. Costs on appeal are awarded to appellant.

Dawson, Acting P. J., and Poochigian, J., concurred.