[No. B228544. Second Dist., Div. Five. Nov. 10, 2011.]

IMPORTS PERFORMANCE et al., Plaintiffs and Appellants, v.
DEPARTMENT OF CONSUMER AFFAIRS, BUREAU OF AUTOMOTIVE
REPAIR, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*This opinion is certified for publication with the exception of the Background and
Discussion, part III.

**COUNSEL**

Kinsella Weitzman Iser Kump & Aldisert and Alan Kossoff for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Gregory J. Salute and Terrence M. Mason, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

## MOSK, J.—

## INTRODUCTION

Razmik Vartan (Vartan), owner of and doing business as Imports Performance,[1] held an automotive repair dealer registration and smog check station license for Imports Performance. Vartan also held an advanced emission specialist (smog check) technician license. Darryl Rowe (Rowe), a mechanic at Imports Performance, also held an advanced emission specialist technician license. Respondent here and in the proceeding below, the Department of Consumer Affairs, Bureau of Automotive Repair (Bureau), conducted an undercover investigation of the smog check inspection and vehicle repair operations at Imports Performance. Following that investigation, the Bureau revoked Vartan's smog check station license probation[2] for Imports Performance; revoked and stayed revocation of Rowe's advanced emission specialist technician license pending completion of four years' probation; and ordered Vartan, as owner of Imports Performance, and Rowe to pay $35,366.40 for the Bureau's costs of investigating and prosecuting the case. Imports Performance, Vartan, and Rowe (petitioners) filed a petition for writ of mandate or administrative mandamus to set aside the Bureau's decision. The trial court denied the petition, and petitioners appeal.

On appeal, petitioners claim that the Bureau used the wrong standard of proof in the revocation proceedings; insufficient evidence supports the Bureau's findings of smog test violations; and the Bureau levied excessive "discipline" in revoking Vartan's smog check station license, revoking and placing Rowe's advanced emission specialist technician license on probation, and ordering payment of $35,366.40 in costs for investigation and prosecution of the case.

In the published portion of this opinion we determine that the Bureau correctly used the preponderance of the evidence standard of proof and did not err in imposing discipline and costs.

## BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] "Vartan" and "Imports Performance" generally are used interchangeably.

[2] At the time of the investigation, Vartan's smog check station license was subject to probation.

*See footnote, *ante*, page 911.

## DISCUSSION

### I. *Standards of Review*

" 'In reviewing the trial court's ruling on a writ of mandate (Code Civ. Proc., § 1085), the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed. [Citation.]' [Citation.]" (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].)

We review for abuse of discretion an administrative agency's revocation of a license. (*Hughes v. Board of Architectural Examiners* (1998) 68 Cal.App.4th 685, 691–692 [80 Cal.Rptr.2d 317]; *Williamson v. Board of Medical Quality Assurance* (1990) 217 Cal.App.3d 1343, 1347 [266 Cal.Rptr. 520] [" 'The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency, and its decision may not be disturbed unless there has been a manifest abuse of discretion. [Citations.]' [Citation.]"].) " 'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed.' [Citations.] This rule is based on the rationale that 'the courts should pay great deference to the expertise of the administrative agency in determining the appropriate penalty to be imposed.' [Citation.]" (*Hughes v. Board of Architectural Examiners, supra,* 68 Cal.App.4th at p. 692.)

### II. *Standard of Proof*

Petitioners contend that the Bureau improperly applied the preponderance of the evidence standard of proof in revoking and staying revocation of Rowe's advanced emission specialist technician license and in revoking Vartan's smog check station license probation. Petitioners argue that the proper standard of proof was clear and convincing evidence.

In their argument concerning the proper standard of proof, petitioners do not distinguish between the status of Rowe's advanced emission specialist technician license and the status of Vartan's smog check station license. At the relevant times, Rowe's advanced emission specialist technician license was in good standing while Vartan's smog check station license was on probation. Although there is no indication in the record as to the standard of proof used by the Bureau, the parties all assume that the Bureau used the preponderance of the evidence standard of proof. As discussed below, we conclude that the same preponderance of the evidence standard of proof applies to the revocation of Rowe's license and to the revocation of Vartan's license probation.

## A. *Revocation of Rowe's Advanced Emission Specialist Technician License*

■ "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." (Evid. Code, § 115.) In determining the proper standard of proof to apply in administrative license revocation proceedings, courts have drawn a distinction between professional licenses such as those held by doctors (*Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601]), lawyers (*Furman v. State Bar* (1938) 12 Cal.2d 212, 229 [83 P.2d 12]), and real estate brokers (*Small v. Smith* (1971) 16 Cal.App.3d 450, 457 [94 Cal.Rptr 136]) on the one hand, and nonprofessional or occupational licenses such as those held by food processors (*San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1894 [58 Cal.Rptr.2d 571]) and vehicle salespersons (*Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 318–319 [90 Cal.Rptr.2d 277]), on the other hand. In proceedings to revoke professional licenses, the decision makers apply the clear and convincing evidence standard of proof, while in proceedings to revoke nonprofessional or occupational licenses, the decision makers apply the preponderance of the evidence standard of proof.

The "sharp distinction between professional licenses, on the one hand, and . . . nonprofessional licenses, on the other, supports the distinction in the standards of proof applicable in proceedings to revoke these two different types of licenses. Because a professional license represents the licensee's fulfillment of extensive educational, training and testing requirements, the licensee has an extremely strong interest in retaining the license that he or she has expended so much effort in obtaining. It makes sense to require that a higher standard of proof be met in a proceeding to revoke or suspend such a license. The same cannot be said for a licensee's interest in retaining a [nonprofessional] license." (*San Benito Foods v. Veneman, supra*, 50 Cal.App.4th at p. 1894.)

■ Although an applicant for an advanced emission specialist technician license must complete certain course work (Cal. Code Regs., tit. 16, § 3340.28, subd. (b)(3)) and pass an examination (Cal. Code Regs., tit. 16, § 3340.29), such requirements are not similar to the "extensive educational, training and testing requirements" necessary to obtain a professional license (*San Benito Foods v. Veneman, supra*, 50 Cal.App.4th at p. 1894).[5] Accordingly, an advanced emission specialist technician license is a nonprofessional

---

[5] A "professional" is "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." (Black's Law Dict. (9th ed. 2004) p. 1329; see Garner, Dict. of Modern Legal Usage (2d ed. 2001) p. 699 [the word "profession" "has been much debased of late . . ."].)

or occupational license and proceedings to revoke such a license are governed by the preponderance of evidence standard of proof.

Petitioners rely on *Viking Pools, Inc. v. Maloney* (1989) 48 Cal.3d 602 [257 Cal.Rptr. 320, 770 P.2d 732] for the proposition that the Bureau should have used the clear and convincing evidence standard of proof because that standard is used in actions to revoke a contractor's license and the requirements to obtain a contractor's license are comparable to or less stringent than those to obtain a "smog license." Petitioners' reliance is misplaced. Although the Supreme Court noted that the administrative law judge "issued a proposed decision finding clear and convincing evidence beyond a reasonable certainty' to sustain the charges" (*id.* at p. 605), the propriety of the administrative law judge's use of that standard of proof was not at issue in the case. Instead, the case concerned the proper interpretation of a statute under which the contractor was charged. (*Id.* at pp. 606–609.)

Petitioners cite *Owen v. Sands* (2009) 176 Cal.App.4th 985 [98 Cal.Rptr.3d 167] for the proposition that in license disciplinary proceedings two different standards of proof are applied—the preponderance of the evidence standard to citation proceedings and the clear and convincing evidence standard to suspension and revocation proceedings. Petitioners' reliance on this case is not justified. In *Owen v. Sands*, a licensed contractor challenged a citation he was issued concerning work he performed on a private residence. (*Id.* at pp. 988–989.) The issue on appeal was whether the clear and convincing evidence standard that courts said should be applied in certain license suspension and revocation proceedings (doctor, attorney, and real estate licenses) also applied in a citation proceeding. (*Id.* at p. 989.) The Court of Appeal held that the preponderance of the evidence standard applies in citation proceedings. (*Id.* at pp. 989–990.) The court did not hold that the clear and convincing evidence standard applies to license suspension or revocation proceedings generally or to a proceeding to suspend or revoke a contractor's license specifically.

B. *Revocation of Vartan's Smog Check Station License Probation*

 Although the standard of proof to revoke a professional license is clear and convincing evidence, the standard of proof to revoke the *probation* of a professional license is preponderance of the evidence. (*Sandarg v. Dental Bd. of California* (2010) 184 Cal.App.4th 1434, 1435, 1441 [109 Cal.Rptr.3d 826] [revocation of a dentist's license probation].) Even if a smog check station license is a professional license, an assumption we do not accept,[6] a

---

[6] Proceedings to revoke a license to operate a long-term health care facility (Health & Saf. Code, § 1428, subd. (e)), to operate a substance abuse treatment facility (Health & Safe. Code,

proceeding to revoke the probation of such a license is subject to the preponderance of the evidence standard of proof and not the clear and convincing evidence standard of proof. (184 Cal.App.4th at pp. 1435, 1441.)

Petitioners argue that the clear and convincing evidence standard should apply to the revocation of Vartan's smog check station license because Imports Performance's liability could only have been based on Rowe's conduct and "the standard of proof for Rowe was clear and convincing evidence." Even if petitioners' vicarious liability theory is correct and the standard of proof for revoking a smog check station license is the standard of proof used for revoking Rowe's advanced emission specialist technician license, petitioners' argument fails because, as discussed above, the standard of proof for revoking Rowe's license is preponderance of the evidence.

## III. Petitioners' Violations*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. Discipline and Costs

Petitioners contend that the revocation of Vartan's smog check station license probation, the revocation and stay of revocation of Rowe's advanced emission specialist technician license, and the order that Vartan and Rowe pay $35,366.40 for the Bureau's costs of investigating and prosecuting the case are "unfair and clearly excessive." Because the trial court did not err in upholding the Bureau's revocation of Vartan's smog check station license probation or in revoking and staying revocation of Rowe's advanced emission specialist technician license, the Bureau's order that Vartan and Rowe pay the Bureau the reasonable costs of its investigation and prosecution of the case was justified.

### A. Discipline

Vartan contends that the revocation of his smog check station license probation was excessive because Imports Performance had been an Automobile Association of America (AAA) approved facility; a number of Imports Performance's customers testified as to the quality of his work and his honesty; he was active in his community; he had an insignificant record of

---

§ 11834.37, subd. (b)), and to operate a child daycare facility (Health & Saf. Code, § 1596.887, subd. (b)) all are explicitly subject to the preponderance of the evidence standard of proof.

*See footnote, *ante*, page 911.

prior discipline with the Bureau; and there was no finding that he had engaged in dishonest, fraudulent, or deceitful acts. Rowe contends that the revocation of his advanced emission specialist technician license was excessive because a number of Imports Performance's customers testified as to the quality of his work and his honesty; he had never before been the subject of Bureau discipline; he had "an outstanding resume, impeccable reputation, and extensive experience"; and there was no finding that he had engaged in dishonest, fraudulent, or deceitful acts.

In revoking Vartan's smog check station license probation, the Bureau considered Imports Performance's current and prior violations of the motor vehicle inspection program and the fact that Vartan had been disciplined twice before for violations of smog check inspection and testing and was "currently on probation for improper acts." The Bureau also took into account the high marks Imports Performance received from AAA in customer satisfaction. The Bureau ruled that revocation of Vartan's smog check station license would ensure the protection of the public's health, safety, and welfare. (See *San Benito Foods v. Veneman, supra*, 50 Cal.App.4th at p. 1893 [" 'The purpose of an administrative proceeding concerning the revocation or suspension of a license is not to punish the individual; the purpose is to protect the public from dishonest, immoral, disreputable or incompetent practitioners.' [Citation.]"].) Moreover, the Bureau did not revoke Vartan's automotive repair dealer registration, thus allowing him to continue to operate Imports Performance as a vehicle repair business, if not as a smog check inspection business. The Bureau's revocation of Vartan's license was not a manifest abuse of its discretion. (*Williamson v. Board of Medical Quality Assurance, supra*, 217 Cal.App.3d at p. 1347; *Hughes v. Board of Architectural Examiners, supra*, 68 Cal.App.4th at pp. 691–692.)

In reaching its decision with respect to Rowe's advanced emission specialist technician license, the Bureau noted that Rowe worked on all three undercover vehicles, and the Bureau found that he committed 10 violations. The Bureau ruled, however, that because Rowe had no prior history of discipline and had extensive National Institute for Automotive Service Excellence certifications, the public's health, safety, and welfare would be protected by imposing a stayed revocation of Rowe's license and four years of probation. By staying revocation of Rowe's license, the Bureau enabled Rowe to continue to perform smog check inspections, if not at Imports Performance. Having properly considered the aggravating and mitigating factors in reaching its decision, the Bureau did not manifestly abuse its discretion in disciplining Rowe's license. (*Williamson v. Board of Medical Quality Assurance, supra*, 217 Cal.App.3d at p. 1347; *Hughes v. Board of Architectural Examiners, supra*, 68 Cal.App.4th at pp. 691–692.)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## B. *Costs*

■ Under Business and Professions Code section 125.3 (section 125.3), subdivision (a),[7] an entity bringing a license or probation revocation proceeding may recover the reasonable costs of its investigation and prosecution of the case. A certified copy of the actual costs is prima facie evidence of the reasonable costs of investigating and prosecuting the case. (§ 125.3, subd. (c).)[8] The Bureau submitted a certified copy of its actual costs of investigating and prosecuting the case.[9]

Petitioners contend that the assessment of $35,366.40 for the Bureau's costs of investigating and prosecuting the case is "unfair and clearly" excessive because the Bureau did not apply a pro rata reduction of costs that took into account the charges and issues on which petitioners prevailed. In support of this contention, petitioners note that the Bureau sought to revoke four licenses and prevailed only as to two licenses. In addition, as to the two licenses that the Bureau revoked, the Bureau failed to prove all of the supporting allegations. Finally, petitioners prevailed as to two issues in their initial writ petition, in which proceeding the trial court had set aside certain findings and conclusions and remanded the matter to the Bureau.

■ Section 125.3, subdivision (a) allows an entity bringing a license or probation revocation proceeding to recover from a license holder found to have committed a violation or violations the reasonable costs of its investigation and prosecution of the case. Section 125.3 does not require an administrative law judge to award costs on a pro rata basis taking into account the charges and issues on which the prosecuting entity did not prevail. Petitioners do not cite any authority in support of their pro rata award theory. In its decision after remand, the Bureau noted that not all of the allegations in the accusation had been proven, but the administrative law judge had not made

---

[7] Section 125.3, subdivision (a) provides, in relevant part, "Except as otherwise provided by law, in any order issued in resolution of a disciplinary proceeding before any board within the department [of consumer affairs] . . . , upon request of the entity bringing the proceeding, the administrative law judge may direct a licentiate found to have committed a violation or violations of the licensing act to pay a sum not to exceed the reasonable costs of the investigation and enforcement of the case."

[8] Section 125.3, subdivision (c) provides, "A certified copy of the actual costs, or a good faith estimate of costs where actual costs are not available, signed by the entity bringing the proceeding or its designated representative shall be prima facie evidence of reasonable costs of investigation and prosecution of the case. The costs shall include the amount of investigative and enforcement costs up to the date of the hearing, including, but not limited to, charges imposed by the Attorney General."

[9] The initial certified copy of actual costs consisted of $7,525.90 for investigative services; $225 for undercover vehicle preparation, documentation, and operation; and $27,823.50 in Attorney General fees for a total of $35,574.40. Thereafter, the Attorney General submitted a certified copy of its fees reflecting $32,879.50 in fees.

an offset for the unproven allegations because they were part of the overall investigation and prosecution of the case, and no distinct and separable efforts were made in connection with the unproven allegations. Under these circumstances, the Bureau did not err in ordering Vartan and Rowe to pay the Bureau's reasonable costs of investigation and prosecution in the amount of $35,366.40.

## DISPOSITION

The judgment is affirmed. The Bureau is awarded its costs on appeal.

Armstrong, Acting P. J., and Kriegler, J., concurred.

On December 7, 2011, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied February 22, 2012, S198818.